## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

**Ravidath Lawrence RAGBIR**

           Petitioner

    vs.

**Jefferson SESSIONS III, in his official capacity as the Attorney General of the United States; Kirstjen NIELSEN in her official capacity as Secretary of Homeland Security; Thomas DECKER, in his official capacity as New York Field Office Director for U.S. Immigration and Customs Enforcement; Scott MECHKOWSKI, in his official capacity as Assistant New York Field Office Director for U.S. Immigration and Customs Enforcement; and the U.S. DEPARTMENT OF HOMELAND SECURITY.**

          Respondents

Case No.:

PETITION FOR WRIT OF HABEAS CORPUS

## PRELIMINARY STATEMENT

Ravidath "Ravi" Lawrence Ragbir ("Petitioner" or "Mr. Ragbir") is a father, husband, and nationally recognized immigrant rights activist who has been unlawfully detained by Respondents. Mr. Ragbir's current detention comes over a decade after he was first placed into removal proceedings in 2006, during which time Mr. Ragbir was subjected to nearly two years of detention before being released on an order of supervision in 2008. Since his release, he has complied with the terms of his supervision and pursued his legal avenues for relief from removal. In addition, Mr. Ragbir has become a leader in the immigrant rights community, and the U.S. Department of Homeland Security has provided him with work authorization and four stays of

1

removal, the latest of which is valid through January 19, 2018. Despite having already been subject to prolonged detention a decade ago when he was first placed in removal proceedings, and despite his valid release on an order of supervision and valid stay of removal, Mr. Ragbir has now been re-detained without cause or due process. Separated from his U.S. citizen wife and daughter, and the community he has served, Mr. Ragbir brings this action to challenge his unlawful detention and revocation of his stay and order of supervision as a violation of his constitutional, statutory, and regulatory rights.

As described in further detail below, Mr. Ragbir's re-detention follows a long history of previous prolonged detention followed by an explicit grant of release and subsequent stays of removal. Mr. Ragbir became a lawful permanent resident in 1994, raising his family in the United States. While working as a salesperson for a now-defunct loan company, Mr. Ragbir was accused and convicted of accepting fraudulent loan applications, resulting in his only arrest and conviction in his over twenty years of living in the United States. In May 2006, after completing his criminal sentence for this conviction, Mr. Ragbir was transferred from criminal to immigration custody. After twenty-two months of custodial immigration detention, the U.S. Department of Homeland Security released Mr. Ragbir pursuant to 8 U.S.C. §1231(a)(6) on an order of supervision. Mr. Ragbir's release from immigration detention as a result of his outstanding equities proved to be only the beginning of a process of institutional and government recognition of his contributions to community, and determinations that no legitimate purpose would be served by Mr. Ragbir's detention and removal.

Mr. Ragbir is currently the Executive Director of the New Sanctuary Coalition. Since his release from detention, Mr. Ragbir has devoted his life to the dignity and well-being of others, working tirelessly at the intersection of faith and immigrant communities, and gathering support

from elected officials at all levels of government, faith leaders, immigrant rights activists and hundreds of community members. Accordingly, he has been granted four administrative stays of removal by the U.S. Immigration and Customs Enforcement Field Office in New York, NY, which have allowed him to remain in the United States with his beloved U.S. Citizen wife and daughter. For nearly ten years, Mr. Ragbir has complied with every condition of his release. On January 11, 2018, with his most recent administrative stay of removal still in place, Mr. Ragbir was suddenly and inexplicably detained by ICE.

Mr. Ragbir's detention is unlawful for five reasons. First, his detention is not authorized by statute. The post-final order removal statute and associated regulations provide for a removal period, or, in the alternative, supervised release and work authorization. The statute and regulations do not provide for re-detention without cause, notice, and an opportunity to be heard. Second, detention based on a revocation of his order of supervision and/or stay of removal violates Mr. Ragbir's right to due process. Both Mr. Ragbir's order of supervision and stay of removal create property and liberty interests in which Mr. Ragbir has a due process right. Third, Mr. Ragbir's detention without a bond hearing violates the statute and the Constitution because it is unconstitutionally prolonged. Fourth, Mr. Ragbir's detention violates the statute and the Constitution because his removal is not reasonably foreseeable and therefore his continued detention is without justification. And fifth, Mr. Ragbir's detention violates the statute and the Constitution because the post-order custody review process is constitutionally inadequate.

For any or all of these reasons, this Court should grant Mr. Ragbir's habeas petition and order the Government to either release Mr. Ragbir on reasonable conditions of supervision or provide him with a constitutionally adequate bond hearing before an impartial adjudicator where the Government bears the burden of establishing that his continued detention is justified.

3

## PARTIES

1. Petitioner Ravidath "Ravi" Ragbir is a resident of Brooklyn, NY and Executive Director of the New Sanctuary Coalition of New York City. He is currently being detained under the direction of Respondents.

2. Respondent Jefferson Sessions III is named in his official capacity as the Attorney General of the United States. In this capacity, he is responsible for the administration of the immigration laws as exercised by the Executive Office for Immigration Review, pursuant to INA § 103(g), 8 U.S.C. § 1103(g), routinely transacts business in the Southern District of New York, is legally responsible for administering Petitioner's removal proceedings and the standards used in those proceedings, and as such is the legal custodian of Petitioner. Respondent Sessions' address is U.S. Department of Justice, 950 Pennsylvania Avenue, N.W., Washington, District of Columbia 20530.

3. Respondent Kirstjen Nielsen is named in her official capacity as the Secretary of Homeland Security in the United States Department of Homeland Security. In this capacity, she is responsible for the administration of the immigration laws pursuant to Section 103(a) of the INA, 8 U.S.C. § 1103(a) (2007); routinely transacts business in the Southern District of New York; supervises Respondents Decker and Mechkowski; is legally responsible for pursuing Petitioner's detention and removal; and as such is the legal custodian of Petitioner. Respondent Nielsen's address is U.S. Department of Homeland Security, 800 K Street, N.W. #1000, Washington, District of Columbia 20528.

4. Respondent Thomas Decker is named in his official capacity as the Field Office Director of the New York Field Office for ICE within the United States Department of Homeland Security. In this capacity, he is also responsible for the administration of immigration

laws and the execution of detention and removal determinations, supervises Respondent Mechkowski, and is legal custodian of Petitioner. Respondent Decker's address is New York ICE Field Office Director, 26 Federal Plaza, 11th Floor, New York, New York 10278.

5. Respondent Scott Mechkowski is named in his official capacity as the Assistant Field Office Director of the New York Field Office for ICE within the United States Department of Homeland Security. In this capacity, he is responsible for the administration of immigration laws and the execution of detention and removal determinations, and is legal custodian of Petitioner. Respondent Mechkowski's address is New York ICE Field Office, 26 Federal Plaza, 9th Floor, New York, New York 10278.

6. Respondent Department of Homeland Security ("DHS") is the federal agency responsible for enforcing Petitioner's continued detention pending his removal proceedings. DHS's address is U.S. Department of Homeland Security, 800 K Street, N.W. #1000, Washington, District of Columbia 20528.

## JURISDICTION

7. Petitioner is currently detained under the authority of Respondents. On January 11, 2018, at the time of filing, Petitioner was physically present within the Southern District in Respondents' custody while he was detained while checking-in with ICE at 26 Federal Plaza, New York, NY.

8. This Court has subject matter jurisdiction over this Petition pursuant to 28 U.S.C. § 2241, 28 U.S.C. § 1331, and Article I, § 9, cl. 2 of the United States Constitution; the All Writs Act, 28 U.S.C. § 1651; the Administrative Procedure Act, 5 U.S.C § 701; and for injunctive relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. Petitioner's

current detention as enforced by Respondents constitutes a "severe restraint[] on [Petitioner's] individual liberty," such that Petitioner is "in custody in violation of the . . . laws . . . of the United States." *See Hensley v. Municipal Court*, 411 U.S. 345, 351 (1973); 28 U.S.C. § 2241(c)(3).

9. Federal district courts have jurisdiction to hear habeas claims by noncitizens challenging the lawfulness or constitutionality of their detention by DHS. *See, e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## VENUE

10. The Southern District of New York is the proper venue to resolve Mr. Ragbir's petition for a writ of habeas corpus. Mr. Ragbir is from New York City and was apprehended in New York City. Mr. Ragbir is being detained under the authority of Respondents Thomas Decker and Scott Mechkowski, and both share the official address of the ICE Field Office at 26 Federal Plaza, New York, New York, within the Southern District. Most of the substantial events relevant to the present case occurred within the District, including Mr. Ragbir's receipt of four stays of removal from the ICE Field Office at 26 Federal Plaza and his re-detention while at his place of work in New York, NY. Furthermore, this Petition was filed on January 11, 2018 while Mr. Ragbir was physically present within the Southern District of New York at 26 Federal Plaza, New York, NY 10278.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Petitioner has no administrative remedies to exhaust. The only administrative process available to Mr. Ragbir is the ability to pursue Post Order Custody Review ("POCR"), which Mr. Ragbir has already pursued three times, leading to his release nine years ago.

There is no reason to disrupt the 2008 administrative decision to release Mr. Ragbir and there is no other administrative process available to individuals facing re-detention.

12.  Moreover, even if there were administrative redress that petitioner could seek, Petitioner need not exhaust his administrative remedies. The detention statute pursuant to which Mr. Ragbir is detained, 8 U.S.C. § 1231(a), has no exhaustion requirement. Exhaustion is required only when Congress specifically mandates it. *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). In all other instances, "sound judicial discretion governs." *Id.*

13. This Court also should not require Petitioner to exhaust his administrative remedies. First, the Supreme Court has recognized that courts should not require exhaustion where there is an unreasonable or indefinite time-frame for administrative action. Exhaustion is thus not appropriate where plaintiff "may suffer irreparable harm if unable to secure immediate judicial consideration of his claim." *Id.* at 147. Petitioner has a constitutionally protected liberty interest in his freedom from government custody. *Zadvydas*, 533 U.S. at 690. Petitioner's unlawful indefinite detention constitutes irreparable harm. *See Seretse-Khama v. Ashcroft*, 215 F. Supp.2d 37, 53 (D.D.C. 2002); *Hardy v. Fischer*, 701 F.Supp. 2d 614, 619 (S.D.N.Y. 2010) (threat of unlawful detention and reimprisonment would constitute quintessential irreparable harm).

14. Second, exhaustion is not required where the Petitioner challenges the constitutionality of the agency procedure itself, "such that the question of the adequacy of the administrative remedy is for all practical purposes identical with the merits of the plaintiff's lawsuit." *McCarthy*, 503 U.S. at 148 (internal brackets omitted). In this case, Petitioner is challenging the constitutionality of any administrative procedures by which Respondents

review the custody status of immigrants in his situation, including the post-order custody

review process. Thus, exhaustion of administrative remedies is not required.

### STATEMENT OF FACTS REGARDING MR. RAGBIR AND HIS CURRENT DETENTION

15. Mr. Ragbir is a longtime Lawful Permanent Resident, community leader, and husband

and father to U.S. Citizens. Mr. Ragbir has lived in the United States for over two

decades and has been a Lawful Permanent Resident since 1994. Ex. 1-C, Mr. Ragbir's

Immigrant Visa and Alien Registration. Mr. Ragbir has a 22-year-old daughter, Deborah

Ragbir, who is a graduate of Rutgers University, and he currently lives in Brooklyn, NY,

with his wife, Amy Gottlieb, who is the Associate Regional Director for the Northeast

Region of the American Friends Service Committee. Ex. 1-D (Birth Certificate of

Deborah Ragbir); Ex. 1-E (Marriage Certificate of Petitioner and Amy Gottlieb); Ex. 1-F

(Declaration of Amy Gottlieb); Ex. 1-G (Passport of Amy Gottlieb).

16. Mr. Ragbir is the Executive Director of the New Sanctuary Coalition of New York City

and sits on the Steering Committee of the New York State Interfaith Network for

Immigration Reform. He has also served as the Chair of the Board of Families for

Freedom. Declaration of Brittany Castle (hereinafter "Castle Decl.") at ¶14.

17. Mr. Ragbir's removal case stems from a single, 17-year old conviction. In the late 1990s,

Mr. Ragbir was working for Household Finance Corporation ("HFC"), a now-defunct,

national mortgage lender, where he held a low-level sales position. In this role, Mr.

Ragbir was primarily a telemarketer and conducted the initial review of mortgage

applications, referred applications to the company's underwriter for independent titling

verification and appraisals, and met with applicants at loan closings to finalize paperwork. Castle Decl. at ¶4.

18. During the course of his work, Mr. Ragbir was approached by an individual whom he knew as Robert Taylor, a broker. Mr. Taylor submitted a number of loan applications to Mr. Ragbir, who referred them on to his supervisors. Mr. Taylor, whose actual name was Robert Kosch, was arrested for submitting fraudulent loan applications and was indicted for wire fraud and conspiracy to commit wire fraud. Several people involved with the loan applications were also charged, including Mr. Ragbir. Mr. Ragbir took his case to trial but was convicted on November 29, 2000. On September 12, 2001, the district court sentenced Mr. Ragbir to serve 30 months in prison for wire fraud and conspiracy to commit wire fraud, and to pay a large restitution. Ex. 1-H (Judgment of Conviction); *see also* Castle Decl. at ¶¶ 5-6.

19. Based on this conviction and the sentence imposed, Mr. Ragbir was transferred from criminal custody to ICE custody on May 22, 2006. Ex. 1-K (Post Order Custody Review Worksheets). His immigration court proceedings were limited to a determination of whether his conviction was an "aggravated felony," a term in the Immigration and Nationality Act that limits one's eligibility for many forms of relief from deportation. The immigration judge concluded that Mr. Ragbir had been convicted of an aggravated felony, and thus ordered him removed on August 8, 2006 on that basis, without consideration of any of the evidence that his family and community submitted attesting to his good character and strong community ties. Castle Decl. at ¶ 8. His order of removal was affirmed by the Board of Immigration Appeals ("BIA") on March 14, 2007. Ex. 1-J (BIA Decision, dated March 14, 2007).

20. Throughout these removal proceedings, Mr. Ragbir was detained in immigration jail and was transferred to Perry County Jail in Union Town, Alabama, despite the fact that his family resided in New Jersey. Ex. 1-I (Notice of Custody Determination); Ex 1-K.

21. While detained in Alabama, on March 23, 2007, Mr. Ragbir filed a pro se motion for a stay of removal and petition for review of his administrative order of removal at the Second Circuit Court of Appeals. *See Ragbir v. Holder*, 389 F. App'x 80 (2d Cir. 2010), *cert.* denied, 132 S. Ct. 95 (2011). At the time of filing, Mr. Ragbir was subject to the forbearance policy of the Second Circuit whereby his removal could not be effectuated prior to a final determination on his motion for a stay. Ex. 1-K.

22. Three POCRs of Mr. Ragbir's detention were conducted in May 2007, July 2007, and January 2008. Ex. 1-K. All three POCRs acknowledged that Mr. Ragbir had come under the forbearance policy of the Second Circuit as a result of his pending petition for review. Ex. 1-L (Decision to Continue Detention). In May 2007 and July 2007, ICE twice issued Mr. Ragbir a "Decision to Continue Detention" based on the imminence of his removal and their characterization of him as a flight risk. Ex. I-L.

23. Mr. Ragbir was then released after his January 2008 POCR some time in February 2008 (exact date unknown). Findings by ICE from Mr. Ragbir's third POCR state that Mr. Ragbir "did not commit a crime of violence and does not appear to be a flight risk and he is fully aware that he will have to report to ICE custody when required. It is recommended that the subject be released from ICE custody and placed on the ISAP program with strict reporting conditions, pending the outcome of the 2nd Circuit Court of Appeals Decision." Ex. 1-M.  The notice further explained, "[o]nce a travel document is

obtained, you will be required to surrender to ICE for removal. You will, at that time, be given an opportunity to prepare for an orderly departure." Id.

24. Immediately after his release and return to the New Jersey-New York metropolitan area, Mr. Ragbir began volunteering for immigrant rights organizations. He quickly became a recognized leader for his activities, first as the Chair of the Board of Families for Freedom, and then later as the Executive Director of the New Sanctuary Coalition and a member of the Steering Committee of the New York State Interfaith Network for Immigration Reform. Castle Decl. at ¶14. He has testified before the New York City Council on detention and deportation policies, met with President Obama's transition team to share his views on national immigration policy, and spoken at countless conferences and media events. Ex. 1 (2017 Administrative Stay of Removal Application and Index of Accompanying Exhibits). He works tirelessly to organize accompaniment programs where volunteers support those otherwise navigating the immigration system alone. Id.

25. Mr. Ragbir has applied for and been granted work authorization on multiple occasions pursuant to his order of supervision and release. Ex. 1-B (Employment Authorization Documents).

26. During the course of this work, Mr. Ragbir met Amy Gottlieb, who oversees the American Friends Service Committee's programs in the Northeast United States. Mr. Ragbir had invited Ms. Gottlieb to be interviewed on a radio show he was hosting at the time. They quickly grew close, fell in love, and were married on September 23, 2010 in front of friends and family. Ex. 1-F at ¶¶ 1, 6-8.

27. Mr. Ragbir did not prevail on his original petition for review at the Second Circuit. *See Ragbir v. Holder*, 389 F. App'x 80 (2d Cir. 2010), *cert. denied*, 132 S. Ct. 95 (2011). Subject to his final order of removal, Mr. Ragbir thus sought an administrative stay of removal from the New York Field Office.

28. Because of Mr. Ragbir's resounding equities—he is supported by members of the U.S. Congress, the New York State Senate, the New York City Council, over forty prominent nonprofit organizations, as well as clergy, community leaders, and hundreds of other community members—Mr. Ragbir was granted his first stay of removal by the ICE Field Office in New York City in December 2011. Ex. 1-P (ICE Letters Granting Stays of Removal); Ex. 1. This stay was renewed in February 2013, March 2014, and January 2016. Ex. 1-P.  His most recent stay renewal request was filed on November 16, 2017. Castle Decl. at ¶26.

29. On March 15, 2012, Mr. Ragbir asked the BIA to reconsider, reopen and remand his immigration proceedings to consider adjustment of status because of his marriage to Ms. Gottlieb. On May 15, 2012, the BIA issued a perfunctory opinion, denying his motion on several grounds. Ex. 1-N (BIA Decision, dated May 15, 2012). The BIA instructed Mr. Ragbir to bring his claims to federal district court. *Id.* at 3 ("The issues involving…the respondent's convictions are properly subject for a post-conviction motion to the federal criminal court."); *see also Ragbir v. Lynch*, 640 F. App'x 105 (2d Cir. 2016). Accordingly, Mr. Ragbir has been pursuing post-conviction relief in the District of New Jersey and a petition for a writ of coram nobis is currently pending. Castle Decl. at ¶24.

30. On December 7, 2017, Mr. Ragbir asked the DHS Office of Chief Counsel to join a motion to reopen and remand his proceedings; this request is pending review. Castle Decl. at ¶ 27.

31. Mr. Ragbir was recently awarded the 2017 Immigrant Excellence Award by the New York State Association of Black and Puerto Rican Legislators, given to those who show "deep commitment to the enhancement of their community." Castle Decl. at ¶ 14; *see also* Ex. 1. He was also awarded the 2017 ChangeMaker Award by South Asian Americans Leading Together (SAALT) for his "tremendous sacrifice, fierce advocacy, and fearless leadership" in the immigrant community. *Id.*

32. Mr. Ragbir has been subject to various conditions pursuant to his order of supervision over the nine years since his release from Alabama, including electronic monitoring and regular check-ins. He has complied with all such conditions. Ex. 1-O (Proof of Compliance with OSUP); Ex. 1-F at ¶¶ 8, 13, 14. On January 11, 2018, Mr. Ragbir was suddenly and inexplicably detained in the presence of his U.S. Citizen wife, his legal representatives, and clergy in New York, NY.

## CLAIMS FOR RELIEF

33. The Government is holding Mr. Ragbir in violation of the Due Process Clause of the U.S. Constitution, the Immigration and Nationality Act, and federal regulations. The factual allegations listed above are incorporated into each of the causes of actions listed below.

### FIRST CAUSE OF ACTION:

### THE IMMIGRATION AND NATIONALITY ACT DOES NOT AUTHORIZE MR. RAGBIR'S DETENTION BECAUSE HE HAS BEEN RELEASED ON A VALID ORDER OF SUPERVISION.

34.  Respondents' presumed basis for redetaining Mr. Ragbir is 8 U.S.C. § 1231, the statute

governing detention following a final order of removal ("post-order detention").

However, under the terms of this statute and the governing regulations, Mr. Ragbir's

detention is unlawful.

35. 8 U.S.C. § 1231 authorizes the detention of individuals following a final order of removal

only under specifically delineated circumstances. First, 8 U.S.C. § 1231(a)(2) requires the

detention of individuals during a 90-day statutory "removal period" during which time

the government must secure the individual's removal. *See* 8 U.S.C. § 1231(a)(1)(A).

36. Second, if the Government fails to remove the individual during the 90-day removal

period, 8 U.S.C. § 1231(a)(6) provides that the Government may detain an individual <u>or</u>

release him or her under terms of supervision under paragraph 3 of the subsection. *See* 8

U.S.C. § 1231(a)(6). ("An alien ordered removed who is [1] inadmissible . . . , [2]

removable [as a result of violations of status requirements or entry conditions, violations

of criminal law, or reasons of security or foreign policy,] or [3] who has been determined

by the Attorney General to be a risk to the community or unlikely to comply with the

order of removal, may be detained beyond the removal period and, if released, shall be

subject to [certain] terms of supervision in paragraph (3)."). Paragraph (3) provides that

an individual who is not removed "shall be subject to supervision" under specific terms,

including requirements that he or she appear periodically before an immigration officer,

obey any written restrictions, and other conditions. 8 U.S.C. § 1231(a)(3). *See also* 8

C.F.R. § 241.5 (providing for specific conditions for release—involving but not limited to

reporting requirements and travel document acquisition requirements—should an order of

supervision be issued).

37. Furthermore, 8 U.S.C. § 1231(a)(7) provides that work authorization can be issued when the removal of an individual is impossible as a result of travel document related issues or "otherwise impracticable or contrary to the public interest." *See also* 8 C.F.R. § 274a.12(c)(18) (same).

38. According to DHS, the 90-day statutory removal period in Mr. Ragbir's case ran from the date that his final order of removal was affirmed by the BIA on March 14, 2007, to June 29, 2007. After that time, Mr. Ragbir was provided with three post-order custody reviews, pursuant to 8 C.F.R. § 214.4. The first two resulted in decisions rejecting release, but the third, dated January 14, 2008, specifically recommended release because Mr. Ragbir had not committed a crime of violence and had gathered tremendous community support. Ex. 1-K (Post Order Custody Review Worksheets). Mr. Ragbir has been complying with all the conditions of his release and receiving work authorization pursuant to 8 U.S.C. § 1231(a)(7) and 8 C.F.R. § 274a.12(c)(18) since his release in 2008. *See* Ex. 1-B; *see also* Ex. 1-O. The grants of work authorization by definition represent a finding by the federal government that Mr. Ragbir's removal is impracticable and/or contrary to the public interest. 8 U.S.C. § 1231(a)(7); 8 C.F.R. § 274a.12(c)(18).

39. No statute authorizes Mr. Ragbir's detention at this time, without cause, prior notice, and an opportunity to be heard. Rather, the only statutory provision that applies to him is the statute that provides that noncitizens "shall" be subject to an order of "supervision" as opposed to "detention." *See* 8 U.S.C. 1231(a)(6).

## SECOND CAUSE OF ACTION:

## DETENTION PURSUANT TO A REVOCATION OF MR. RAGBIR'S ORDER OF SUPERVISION AND/OR STAY OF REMOVAL IS CONTRARY TO THE STATUTE, VIOLATES ICE'S OWN REGULATIONS, AND VIOLATES MR. RAGBIR'S CONSTITUTIONAL RIGHTS.

40. As articulated herein, Mr. Ragbir's release on an order of supervision is authorized by statute. *See* 8 U.S.C. §1231(a)(6). The four administrative stays of removal that Mr. Ragbir has been granted are also authorized by statute. *See* 8 C.F.R. § 241.6. None of the conditions of Mr. Ragbir's order of supervision or stays of removal have been violated.

41. To the extent the government has revoked Mr. Ragbir's order of supervision and/or stay of removal without notice or an opportunity to be heard, the government has violated the statute and the applicable regulation, 8 C.F.R. § 241.4(I)(2), by failing to provide Mr. Ragbir with a particularized notice of the reason(s) of the revocation of his release or an opportunity to respond to the allegations contained therein. When the government fails to comply with its own federal regulations, as it did when it revoked Mr. Ragbir's release in violation of its own procedures, the action should be found invalid. *See e.g., Ying Fong v. Ashcroft*, 317 F. Supp. 2d 398, 403-04 (S.D.N.Y. 2004) (granting habeas petition where petitioner was deported fewer than 72 hours after her arrest and regulation mandated a 2-hour rule); *Rombot v. Souza*, No. 17-11577-PBS, 2017 U.S. Dist. LEXIS 185244, at *12 (D. Mass. Nov. 8, 2017) (granting habeas petition where ICE conducted custody status review improperly in violation of 8 C.F.R. § 241.4).

42. The government has further violated its own representations to this Court and other, as well as to Mr. Ragbir in his Release Notification regarding the conditions under which his release could be revoked. *See e.g., Leybinsky v. United States Immigration & Customs Enf't*, 2013 U.S. Dist. LEXIS 2966, at *16 (S.D.N.Y. Jan. 8, 2013), *vacated*, 553 Fed. Appx. 108 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 279 (2014) (ICE states that, unless travel documents become available, a petitioner can control whether his release from

detention is revoked by following the terms of his release); Ex. 1-M (Release
Notification) (informing Mr. Ragbir that "a violation of one of more of these conditions,
or of any local, state or federal law, may result in you being taken back into custody").

43. To the extent the government has revoked Mr. Ragbir's order of supervision and/or stay
of removal without notice or an opportunity to be heard, the government has also
deprived Mr. Ragbir of due process of law. The Due Process clause applies to all persons
in the United States, "whether their presence here is lawful, unlawful, temporary, or
permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Procedural due process
constrains governmental decisions that deprive individuals of property or liberty interests
within the meaning of the Due Process Clause of the Fifth Amendment. *See Matthews v.
Eldridge*, 424 U.S. 319, 332 (1976); *see also Perry v. Sindermann*, 408 U.S. 593, 601–03
(1972) (reliance on informal policies and practices may establish a legitimate claim of
entitlement to a constitutionally-protected interest). Infringing upon a protected interest
triggers a right to a hearing before that right is deprived. *See Board of Regents of State
Colleges v. Roth*, 408 U.S. 564, 569–70 (1972).

44. Mr. Ragbir's order of supervision and stay of removal create legitimate liberty and
property interests. Although the regulatory framework suggests that stays and orders of
supervision may be rescinded at the discretion of the government, both create vested
liberty and property rights for Mr. Ragbir. First, Mr. Ragbir has a liberty interest in his
freedom from physical confinement, which his order of supervision and stay of removal
help to secure. *See Zadvydas*, 533 U.S. at 690. Second, Mr. Ragbir also has a property
interest in his order of supervision and stay. Property interests "are created and their
dimensions are defined by existing rules or understandings that . . . secure certain benefits

and that support claims of entitlement to those benefits." *Board of Regents of State Colleges*, 408 U.S. at 577. As already demonstrated herein, Mr. Ragbir's stay and order of supervision generate a protected property interest. In order to seek his four administrative stays of removal, Mr. Ragbir completed a rigorous application process and criminal background check and paid an application fee, with the expectation of validity through at least the grant date of January 19, 2018. Ex. 1-P. Similarly, Mr. Ragbir has complied with the terms of his order of supervision since 2008, a set of procedures that have continuously provided Mr. Ragbir with work authorization since his release. Ex. 1-B; Ex. 1-O.

45. To the extent that the government revoked Mr. Ragbir's order of supervision and/or stay of removal without prior notice or opportunity to be heard, the government has infringed upon Mr. Ragbir's protected liberty and property interests. Mr. Ragbir should thus be afforded an opportunity to be heard prior to the revocation of his order of supervision and/or administrative stay of removal.

### THIRD CAUSE OF ACTION:

### MR. RAGBIR'S DETENTION IS PRESUMPTIVELY UNCONSTITUTIONAL BECAUSE HE HAS ALREADY BEEN DETAINED FOR A PROLONGED PERIOD OF TIME

46. Serious constitutional concerns are implicated in this case because Mr. Ragbir's "freedom from imprisonment . . . lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). In the "special and narrow nonpunitive circumstances" of immigration detention, due process requires "a special justification . . . [that] outweighs the individual's constitutionally protected interest in

avoiding physical restraint." *Id.* (internal quotation marks omitted) (internal citations omitted).

47. Moreover, as detention becomes prolonged, the Due Process Clause requires a sufficiently strong justification to outweigh the significant deprivation of liberty, as well as procedural protections. *Zadvydas*, 533 U.S. at 690–91; *Diop v. ICE*, 656 F.3d 221, 231 (3d Cir. 2011) (noting the historical antecedents of implementing procedural protections against deprivation of liberty among citizens and noncitizens absent "'sufficiently strong special justifications'") (quoting *Zadvydas*, 533 U.S. at 690); *cf. Lora v. Shanahan,* 804 F.3d 601 (2d Cir. 2014). The *Zadvydas* Court was explicit that after six months, detention pursuant to 8 U.S.C. § 1231 would become presumptively unconstitutional, requiring a sufficiently strong justification. 533 U.S. at 701. This requires release, or at a minimum, a bond hearing if a person has been detained for six months. *See Diouf v. Napolitano*, 634 F.3d 1081 (9th Cir. 2011).

48. Mr. Ragbir has been most recently detained since January 11, 2018. However, he is being detained as part of the same removal proceedings and removal order for which he was previously detained. Mr. Ragbir's previous detention began on May 22, 2006. Ex. 1-I (Notice of Custody Determination). He continued to be detained through and following the issuance of a final order of removal on March 14, 2007. He was released in February 2008. Ex. 1-M; Castle Decl. at ¶ 3. Thus, Mr. Ragbir has already been detained for twenty-two months, fourteen of which were post-final order. This far exceeds the six-month time period that the Supreme Court deemed presumptively reasonable in *Zadvydas*. *See Zadvydas*, 533 U.S. at 701; *see also Lora v. Shanahan*, 804 F.3d 601 (2d

Cir. 2014) (holding that even prior to a final order of removal, individuals subject to mandatory detention must receive a bond hearing within six months).

49. The fact that the Government has re-detained Mr. Ragbir following nine years of release only strengthens Mr. Ragbir's claim of unreasonably prolonged detention. Just as it is well established that detainees cannot run the clock in order to ripen a *Zadvydas* claim, so too is the government prohibited from arguing that Mr. Ragbir's time of release and re-detention re-started the clock. *See Lin v. United States*, No. CIV.A. 5:07-CV-26, 2007 WL 951618, at *3 (S.D. Tex. Mar. 28, 2007) ("If a detention of six months is presumably reasonable in order to achieve such ends, it hardly seems to matter under the statute *when* the government exercises that power.")

50. Thus, counting the twenty-two months that Mr. Ragbir spent in detention, including the fourteen months of post-final order detention, Mr. Ragbir's combined immigration detention has far *exceeded one year* by any measure—well beyond the average length of detention cited in *Zadvydas* and federal circuit cases governing pre- and/or post-final order detention. *Zadvydas v. Davis*, 533 U.S. 678 (2001); *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2014); *Diouf v. Napolitano*, 634 F.3d 1081 (9th Cir. 2011). Pursuant to *Zadvydas* and this line of cases, Mr. Ragbir's continued, prolonged detention is thus presumptively unconstitutional. He should therefore be released, or at minimum, is entitled to a bond hearing.

## FOURTH CAUSE OF ACTION

## MR. RAGBIR'S DETENTION BEARS NO REASONABLE RELATIONSHIP TO ANY LEGITIMATE PURPOSE, AS HIS REMOVAL IS NOT REASONABLY FORESEEABLE.

51. To comport with due process, detention must bear a reasonable relationship to its two regulatory purposes—to ensure the appearance of noncitizens at future hearings and to prevent danger to the community pending the completion of removal. *Zadvydas v. Davis*, 533 U.S. at 690–691 (2001); *Diop v. ICE*, 656 F.3d 221, 233–234 (3d Cir. 2011); *Gordon v. Shanahan*, No. 15-Civ-261, 2015 WL 1176706 at *10 (S.D.N.Y. Mar. 13, 2015). As previously stated, such a justification for detention is required to be particularly strong once detention is presumptively unconstitutional. *See supra* at ¶ 45.

52. The detention of Mr. Ragbir nine years after his release is arbitrary on its face. As ICE itself recognized when they released Mr. Ragbir in February 2008, Mr. Ragbir did not commit a crime of violence, nor is he a flight risk. Ex. 1-K. In the interim between Mr. Ragbir's release in 2008 and his re-detention in 2018, Mr. Ragbir was not arrested or convicted of any crimes. Castle Decl. at ¶ 28. For ten years, Mr. Ragbir has dutifully complied with every condition of his order of supervision. Ex. 1-O. Thus, DHS's justification for Mr. Ragbir's current detention cannot be based on any new criminal convictions or non-compliance with his order of supervision. Without any explanation or new basis for why Mr. Ragbir is now subject to detention—when ten years ago, he was released—his continued detention is arbitrary and violates due process. *See supra,* Second Cause of Action.

53. Nor has the government met its burden of proof that Mr. Ragbir's removal is reasonably foreseeable as is required by *Zadvydas*. 533 U.S. at 701. Upon information and belief, Respondents do not and have not obtained a travel document from Trinidad and Tobago, despite Mr. Ragbir's removal order having been deemed final since 2007. Requests from counsel to see any such document have been denied. In light of Respondents' failure to

obtain such a document in a decade, and their failure to produce such a document upon

detaining Mr. Ragbir, Respondents have not demonstrated the likelihood that such a

travel document could be sought and acquired in the reasonably foreseeable future.

54. Moreover, even if Respondents have travel documents, re-detention would not be

authorized. By the terms of Mr. Ragbir's own release notification and order of

supervision, once a travel document is obtained, Mr. Ragbir must "be given an

opportunity to prepare for an orderly departure". Ex. 1-M (Release Notification) Through

its sudden arrest of Mr. Ragbir and refusal to respond to attempts by Mr. Ragbir's

counsel to contact the field office prior to the check-in, *see* Castle Decl. at ¶26, ICE has

violated its promise to permit Mr. Ragbir an orderly return. *See Rombot v. Souza*, No. 17-

11577-PBS, 2017 U.S. Dist. LEXIS 185244, at *13 (D. Mass. Nov. 8, 2017) (ICE

violated the Due Process Clause of the Fifth Amendment when it detained Petitioner

without providing him an opportunity to prepare for an orderly departure)

55. An individual such as Mr. Ragbir, who has been detained ten years after his release and

has reintegrated into his community, should not be subject to detention without a bond

hearing. His detention is presumptively unconstitutional, and the government has failed

to rebut that presumption by articulating any legitimate purpose with which Mr. Ragbir's

continued detention comports.

**FIFTH CAUSE OF ACTION**

**<u>POST ORDER CUSTODY REVIEW IS CONSTITUTIONALLY INADEQUATE
AND THEREFORE, MR. RAGBIR'S DETENTION WITHOUT A BOND
HEARING RAISES SERIOUS CONSTITUTIONAL CONCERNS</u>**

56. The administrative custody reviews ("POCR") to which Mr. Ragbir is entitled under *Zadvydas* and 8 C.F.R. § 214.4 are constitutionally inadequate. POCR is nothing more than a cursory paper review. The Ninth Circuit has explained that a cursory paper review process falls "far short of the procedural protections afforded in ordinary bond hearings, where aliens may contest the necessity of their detention before an immigration judge and have an opportunity to appeal that determination to the BIA." *Casas-Castrillon v. DHS*, 535 F.3d 942, 951 (9th Cir. 2008) (requiring individualized bond hearings because of the constitutional inadequacy of administrative custody review in the pre-final order context); *see also Diouf v. Napolitano*, 634 F.3d 1081 (9th Cir. 2011) (extending *Casas-Castrillon* to the post-final order context).

57. As he did on three occasions during his post-final order detention at the Perry County Jail in Alabama, Mr. Ragbir will receive a cursory paper review under POCR. However, ICE still retains the authority to deny him release based on specious findings that he presents a danger and a flight risk because of his criminal history—an immutable fact for Mr. Ragbir and so many detainees similarly situated. Indeed, in POCR reviews dated May 22, 2006 and July 13, 2007 the "Decision to Continue Detention" determination that Mr. Ragbir received states that the "criminal conviction and the penalty assessed indicate you to be a flight risk" with no explanation whatsoever and no consideration of evidence of rehabilitation. Ex. 1-L (Decision to Continue Detention).

58. Contrastingly, at a bond hearing, Mr. Ragbir would be able to be represented by his counsel, testify on his own behalf, and present witnesses and other evidence before an impartial immigration judge.

59. Because Mr. Ragbir's detention has been unaccompanied by the procedural protections

that such a significant deprivation of liberty requires under the Due Process Clause of the

Fifth Amendment to the U.S. Constitution, his continued detention without a bond

hearing is unlawful.

### PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

1) Assume jurisdiction over this matter;

2) Enjoin Respondents from transferring the Petitioner outside the jurisdiction of
the New York Field Office pending the resolution of this case;

3) Issue a Writ of Habeas Corpus ordering Respondents to release Petitioner
immediately, or, in the alternative, ordering Respondents to provide Mr.
Ragbir with a constitutionally adequate, individualized hearing before an
impartial adjudicator at which Respondents bear the burden of establishing
that Petitioner's continued detention is justified;

4) Award Petitioner his costs and reasonable attorneys' fees in this action as
provided for by the Equal Access to Justice Act, 28 U.S.C. § 2412, or other
statute; and

5) Grant such further relief as the Court deems just and proper.

Dated: New York, NY                                  Respectfully submitted,
       January 11, 2018

                                                     /s/ Alina Das
                                                     ALINA DAS, Esq. (AD8805)
                                                     JESSICA ROFÉ, Esq.
                                                     Brittany Castle, Legal Intern
                                                     Jeremy Cutting, Legal Intern

Immigrant Rights Clinic
Washington Square Legal Services, Inc.
245 Sullivan Street, 5th Floor
New York, New York 10012
(212) 998-6430

*Counsel for Petitioner*

## EXHIBIT LIST

**EXHIBIT 1**                    2017 Administrative Stay of Removal Application and Index of
                                 Accompanying Exhibits

Administrative Documents

**EXHIBIT 1-A**                  Forms G-28, Notices of Entrance of Appearance

**EXHIBIT 1-B**                  Employment Authorization Documents

Family Documents

**EXHIBIT 1-C**                  Mr. Ragbir's Immigrant Visa and Alien
                                 Registration

**EXHIBIT 1-D**                  Birth Certificate of Deborah Ragbir, Petitioner's
                                 U.S. Citizen Daughter

**EXHIBIT 1-E**                  Marriage Certificate of Petitioner and Amy Gottlieb

**EXHIBIT 1-F**                  Declaration of Amy Gottlieb

**EXHIBIT 1-G**                  U.S. Passport of Amy Gottlieb

Criminal Case Documents

**EXHIBIT 1-H**                  Judgment of Conviction

Immigration Case Documents

**EXHIBIT 1-I**                  Notice of Custody Determination

**EXHIBIT 1-J**                  BIA Decision, dated March 14, 2007

**EXHIBIT 1-K**                  Post Order Custody Review Worksheets

**EXHIBIT 1-L**                  Decision to Continue Detention

**EXHIBIT 1-M**                  Release Notification Under the Intensive
                                 Supervision Appearance Program

**EXHIBIT 1-N**                  BIA Decision, dated May 15, 2012

**EXHIBIT 1-O**                  Proof of Compliance With OSUP

**EXHIBIT 1-P**     ICE Letters Granting Stays of Removal

**EXHIBIT 1-Q**     ICE Letter Denying Stay of Removal