UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

Ravidath Lawrence RAGBIR

          Petitioner

    vs.

Jefferson SESSIONS III, in his official capacity
as the Attorney General of the United States;
Kirstjen NIELSEN in her official capacity as
Secretary of Homeland Security; Thomas
DECKER, in his official capacity as New York
Field Office Director for U.S. Immigration and
Customs Enforcement; Scott MECHKOWSKI,
in his official capacity as Assistant New York
Field Office Director for U.S. Immigration and
Customs Enforcement; and the U.S.
DEPARTMENT OF HOMELAND SECURITY.

          Respondents

Case No.:

MEMORANDUM OF LAW IN
SUPPORT OF PETITION FOR
WRIT OF HABEAS CORPUS AND
COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF AND IN
SUPPORT OF APPLICATION FOR
ORDER TO SHOW CAUSE

## PRELIMINARY STATEMENT

    Ravidath "Ravi" Lawrence Ragbir ("Petitioner" or "Mr. Ragbir") is a father, husband,

and nationally recognized immigrant rights activist who has been unlawfully detained by

Respondents. Mr. Ragbir's current detention comes over a decade after he was first placed into

removal proceedings in 2006, during which time Mr. Ragbir was subjected to nearly two years of

detention before being released on an order of supervision in 2008. Since his release, he has

become a leader in the immigrant rights community, and the U.S. Department of Homeland

Security has provided him with work authorization and four stays of removal, the latest of which

is valid through January 19, 2018. Despite having already been subject to prolonged detention a

decade ago when he was first placed in removal proceedings, despite his valid release on an

1

order of supervision and valid stay of removal, and despite his compliance with every condition

of his release, Mr. Ragbir was suddenly and inexplicably re-detained without cause or due

process during a routine check-in with his deportation officer.

Mr. Ragbir's detention is unlawful on multiple grounds. First, his detention is not

authorized by statute. The post-final order removal statute and associated regulations provide for

a removal period, or, in the alternative, supervised release and work authorization. The statute

and regulations do not provide for re-detention without cause, notice, and an opportunity to be

heard. Second, detention based on a revocation of his order of supervision and/or stay of removal

violates ICE's own regulations, as well as the representations ICE has made to both this Court

and Mr. Ragbir regarding the conditions under which his release could be revoked, and, finally,

violates Mr. Ragbir's right to due process. Third, Mr. Ragbir's detention without a bond hearing

violates the statute and the Constitution because it is unconstitutionally prolonged and because

his detention is without justification. And fourth, Mr. Ragbir's detention violates the statute and

the Constitution because the post-order custody review process is constitutionally inadequate.

For any or all of these reasons, this Court should grant Mr. Ragbir's habeas petition and

complaint, declare any revocation of Mr. Ragbir's order of supervision and/or stay of removal

unlawful, and order the Government to either release Mr. Ragbir on reasonable conditions of

supervision or provide him with a constitutionally adequate bond hearing before an impartial

adjudicator where the Government bears the burden of establishing that his continued detention

is justified.

Pending consideration of these claims, this Court should enjoin Respondents from

transferring Mr. Ragbir outside the jurisdiction of this Court and stay his removal from the

United States.

## STATEMENT OF FACTS

As described in the habeas petition and complaint, Mr. Ragbir is a longtime lawful permanent resident who has lived in the United States for more than twenty years. He is married to a U.S. citizen, has a U.S. citizen daughter, and is a resident of Brooklyn, New York. In 2001, Mr. Ragbir received his one and only criminal conviction, which federal immigration officials deemed to be a basis for deportation. After Mr. Ragbir completed his sentence, federal immigration officials placed Mr. Ragbir in removal proceedings in New York, and detained him for twenty-two months, transferring him to a remote immigration jail in Alabama.

In 2008, federal immigration officials released Mr. Ragbir from immigration jail on an order of supervision, concluding that he was not a danger to society and that his removal was not reasonably foreseeable. Mr. Ragbir returned home to the New York area where he became a prominent community organizer helping other immigrants facing deportation. For years, Mr. Ragbir has served as Executive Director of the New Sanctuary Coalition of New York City, a network of over twenty interfaith organizations. For his work, Mr. Ragbir has been the recipient of numerous awards, including the 2017 Immigrant Excellence Award by the New York State Association of Black and Puerto Rican Legislators and the 2017 ChangeMaker Award by South Asian Americans Leading Together. Declaration of Brittany Castle ("Castle Decl.") at ¶14.

Throughout the period since his release from immigration detention in 2008, Mr. Ragbir has maintained a law-abiding and productive life. He has complied with all requirements for his order of supervision, reporting to U.S. Immigration and Customs Enforcement regularly and receiving work authorization each year. In addition, since 2011, Mr. Ragbir has received four consecutive stays of removal from the New York Field Office for U.S. Immigration and Customs Enforcement (ICE), the most recent one of which was set to expire on January 19, 2018. Mr.

Ragbir has no contact with the criminal legal system and no other problems with the law.  He has diligently pursued legal avenues to challenge his removal order and conviction, and has been represented by the New York University Immigrant Rights Clinic since 2008.  Most recently, he submitted an application to renew his stay of removal with ICE, as well as a request for ICE to join with him in a motion to reopen his removal proceedings based on extensive evidence that his conviction is not a deportable offense.

Despite Mr. Ragbir's compliance with his order of supervision, his valid stay of removal, his regular reporting with ICE, and the lack of any further contact with the law, Respondents inexplicably re-detained Mr. Ragbir during a routine ICE check-in appointment on January 11, 2018.  No notice was given to Mr. Ragbir or his counsel of the reasons for this action prior to his summary arrest and detention, nor was any opportunity given to him or his counsel to contest those reasons before an impartial decisionmaker.  Now, a decade after Mr. Ragbir was released from twenty-two months of detention, Mr. Ragbir is back in detention without cause, notice, or an opportunity to be heard, separated from family and thousands of community members who love and support him.

## ARGUMENT

### I.  Mr. Ragbir's detention is not authorized by the Immigration and Nationality Act because he has been released on a valid order of supervision.

Respondents' presumed basis for re-detaining Mr. Ragbir is 8 U.S.C. § 1231, the statute governing detention following a final order of removal ("post-order detention"). However, under the terms of this statute and the governing regulations, Mr. Ragbir's detention is unlawful.

U.S.C. § 1231 authorizes the detention of individuals following a final order of removal only under specifically delineated circumstances. First, 8 U.S.C. § 1231(a)(2) requires individuals be detained during a 90-day statutory "removal period" during which time the

4

government must secure the individual's removal. *See* 8 U.S.C. § 1231(a)(1)(A). Second, if the Government fails to remove the individual within the 90-day removal period, 8 U.S.C. § 1231(a)(6) provides that the Government may detain an individual <u>or</u> release him/her under terms of supervision under paragraph (3) of the subsection. *See* 8 U.S.C. § 1231(a)(6) ("An alien ordered removed who is [1] inadmissible . . . , [2] removable [as a result of violations of status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy,] or [3] who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to [certain] terms of supervision in paragraph (3).").

8 U.S.C. § 1231(a)(3) provides that an individual who is not removed "shall be subject to supervision" under specific terms, including requirements that he or she appear periodically before an immigration officer, obey any written restrictions, and other conditions. *See also* 8 C.F.R. § 241.5 (providing for specific conditions for release—involving but not limited to reporting requirements and travel document acquisition requirements—should an order of supervision be issued). Furthermore, 8 U.S.C. § 1231(a)(7) provides that work authorization can be issued when the removal of an individual is impossible as a result of travel document related issues or is "otherwise impracticable or contrary to the public interest." *See also* 8 C.F.R. § 274a.12(c)(18) (same).

According to DHS, the 90-day statutory removal period in Mr. Ragbir's case ran from the date that his final order of removal was affirmed by the BIA on March 14, 2007, to June 29, 2007. 8 U.S.C. § 1231(a)(1)(B)(i). Ex. 1-J (BIA Decision); Ex. 1-K (Post Order Custody Review Worksheets). After that time, Mr. Ragbir was provided with three post-order custody reviews, pursuant to 8 C.F.R. § 214.4. Ex. 1-K. The first two resulted in decisions rejecting release, but

the third, dated January 14, 2008, recommended release. Id. In order to recommend release, the government must have determined that Mr. Ragbir met all of the following criteria: (1) travel documents were not available or, in the opinion of DHS, immediate removal was not practicable or in the public interest; (2) Mr. Ragbir was non-violent and was likely to remain non-violent if released; (3) Mr. Ragbir did not pose a threat to the community; and (4) Mr. Ragbir was not likely to violate the conditions of his release and was not a flight risk. 8 C.F.R. § 241.4(e).[1] Indeed, Mr. Ragbir's Release Notification in 2008 specifically recommended release because Mr. Ragbir had not committed a crime of violence and had gathered tremendous community support. Ex. 1-L.

Thus Mr. Ragbir's release, but not his detention, is explicitly authorized by statute. As discussed in Section B *infra*, no statute authorizes Mr. Ragbir's detention at this time, without cause, prior notice, and an opportunity to be heard. *See* 8 C.F.R. § 241.4(I)(2). Rather, the only statutory provision that applies to him is the statute that provides that noncitizens "shall" be subject to an order of "supervision" as opposed to "detention." *See* 8 U.S.C. 1371(a)(6).

> **II. Detention pursuant to a revocation of Mr. Ragbir's order of supervision and/or stay of removal is contrary to the INA and APA, ICE's own regulations, ICE's representations to this Court and to Mr. Ragbir, and violates Mr. Ragbir's constitutionally protected due process rights.**
>
> **A. Respondents' detention of Mr. Ragbir's violates the INA and APA, ICE's own regulations, representations to this Court regarding criteria for revocation of release, and statements made to Mr. Ragbir.**

As articulated in Section A, *supra*, Mr. Ragbir's release on an order of supervision is explicitly authorized by statute. *See* 8 U.S.C. §1231(a)(6). The four administrative stays of

---

[1] As discussed in Section C(2), nothing in Mr. Ragbir's case has changed since his release such that these factors are no longer presently true.

removal that Mr. Ragbir has been granted are also authorized by statute. *See* 8 C.F.R. § 241.6. None of the conditions of Mr. Ragbir's order of supervision or stays of removal have been violated. Ex. 1-O (Proof of Compliance with Order of Supervision). By detaining Mr. Ragbir at his ICE check-in without cause, notice or an opportunity to be heard, ICE violated the INA, the APA, 8 C.F.R. §§ 241.4(I)(2) & 241.13(i), as well as its own representations to this Court and to Mr. Ragbir regarding the possible grounds for revocation of release.

As described above, the INA specifies circumstances upon which a person may be released from custody, and does not provide for re-detention except impliedly for a violation of those terms.   The relevant regulatory framework, 8 C.F.R. §§ 241.4(l) and 241.13(i), authorizes revocation of an individual's release on an order of supervision only in certain contexts.   Section 241.4(l) specifies revocation may occur upon violation of the conditions of release, *see* 8 C.F.R. § 241.4(l)(1), or when in the district director's opinion, revocation is in the public interest because one of four conditions is met: "(1) the purposes of release have been served; (2) the alien violates any condition of release; (3) it is appropriate to enforce a removal order or to commence removal proceedings against an alien; or (4) the conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate." 8 C.F.R. § 241.4(l)(2). Section 241.13(i) provides further conditions where release decisions may be revoked, only for the purpose of removal. Notably, several of these provisions are found only in the regulations and not the statute and are ultra-vires.   Even to the extent the provisions apply, Respondents have failed to comply with the process specified.

Furthermore, ICE has represented to this Court, other Courts, and to Mr. Ragbir himself that his release is subject to revocation only upon procurement of travel documents and/or violation of the conditions of release. In *Leybinsky v. United States Immigration & Customs*

*Enf't*, this Court considered whether an individual's habeas petition was mooted when that individual was released from immigration detention, or if the possibility of revocation of release made the cause of action capable of repetition yet evading review and thus an exception to the mootness doctrine. No. 10 Civ. 5137 (RA), 2013 U.S. Dist. LEXIS 2966 (S.D.N.Y. Jan. 8, 2013). In its briefing, ICE took the position that unless the Petitioner's "removal becomes reasonably foreseeable, any future detention will result from 'ICE's determination that [Petitioner] has violated the conditions of his [Order of Supervision]'". *Id.* at *16. ICE further asserted that absent either condition, "there can be no reasonable expectation that [Petitioner] will be detained again" and that it was within the Petitioner's control to avoid detention by simply complying with the terms of his release. *Id.* Considering this same issue and argument by ICE, the court in *Hubacek v. Holder* similarly held that a petitioner is "able…to prevent such a possibility [of detention] from occurring by complying with the conditions set forth in his order of supervision". No. 13-CV-1085C, 2014 U.S. Dist. LEXIS 36272, at *6 (W.D.N.Y. Mar. 19, 2014); *see also e.g., Mohamed v. Sessions*, No. 16-3828 (SRN/BRT), 2017 U.S. Dist. LEXIS 164576, at *8 (D. Minn. Sep. 14, 2017) (holding that the government is foreclosed under federal law from detaining the Petitioner unless he violates his release provisions or, due to changed circumstances, there exists a significant likelihood of removal in the reasonably foreseeable future).

Further still, ICE has stated in writing to Mr. Ragbir that his release may be revoked only upon these same two conditions: procurement of travel documents and/or violation of the conditions of his release. In the Release Notification provided to Mr. Ragbir by ICE in 2008 upon his release from detention, Mr. Ragbir was instructed:

> "Your release will be subject to certain written conditions that will be provided to you shortly, and by which you must abide. A violation of one or more of these

conditions, or of any local, state or federal law, may result in you being taken back into custody and any bond, which you may have posted, being forfeited. …Once a travel document is obtained, you will be required to surrender to ICE for removal. You will, at that time, be given an opportunity to prepare for an orderly departure." Ex. 1-M.

Mr. Ragbir has fully complied with the conditions of his release on an order of supervision, which have included electronic monitoring, home visits, telephonic check-ins, weekly and monthly in-person check-ins, and more recently yearly check-ins. Ex. 1-F (Declaration of Amy Gottlieb); Ex. 1-O (Proof of Compliance with Order of Supervision). Moreover, ICE has presented neither Mr. Ragbir, his counsel, nor this Court with evidence that it has procured valid travel documents.[2] As such, the revocation of Mr. Ragbir's release is in clear violation of the criteria ICE consistently claims govern its decisions to revoke release, as well as the Release Notification provided to Mr. Ragbir.

Should this Court find that ICE is not bound by its previous representations to this Court and to Mr. Ragbir, ICE has additionally violated the broader regulatory requirements articulated in 8 C.F.R. § 241.4(l), which require an individual to be provided with notification of the reasons for the revocation, and an opportunity to respond to the factual allegations contained therein. 8 C.F.R. § 241.4(l)(1). Upon revoking Mr. Ragbir's order of supervision and stay, ICE provided no

---

[2] Even if ICE can present this Court with proof they have procured valid travel documents for Mr. Ragbir, this does not cure the violation of the terms of the Release Notification, which also promised Mr. Ragbir the "opportunity to prepare for an orderly departure". Ex. 1-M. Through its refusal to respond to Mr. Ragbir's counsel's attempts to receive an update on his pending stay of removal application as well as the sudden arrest of Mr. Ragbir, ICE has violated its promise that Mr. Ragbir would be permitted to prepare for an orderly departure, which would have allowed Mr. Ragbir to put his affairs in order, including transitioning leadership at the organization he is Executive Director of, and saying goodbye to this family. Such a violation of its promise to Mr. Ragbir is a separate violation warranting Mr. Ragbir's release from detention. *See Rombot v. Souza*, Civil Action No. 17-11577-PBS, 2017 U.S. Dist. LEXIS 185244, at *10-11 (D. Mass. Nov. 8, 2017).

particularized notification of the reasons for revocation.[3] *See* 8 C.F.R. § 241.4(l)(1).  As is described in Mr. Ragbir's petition, ¶32, Mr. Ragbir was suddenly detained while at a regular check-in appointment with his deportation officer.  To the extent that an officer informed Mr. Ragbir's counsel that Mr. Ragbir would be detained, this verbal 'notification' occurred after Mr. Ragbir was physically in the custody of ICE and already detained for all practical purposes. He was unable to leave, nor was he provided with any meaningful opportunity to address the reasons for revocation.  ICE's action to revoke Mr. Ragbir's release was thus unlawful because it violated its own procedural requirements.

Moreover, under 8 C.F.R. § 241.13(i), Mr. Ragbir has at minimum a regulatory right to a detailed explanation for the reasons of revocation as well as an interview to contest the basis for the revocation.  Upon information and belief, Mr. Ragbir has been provided with neither proper notice and an opportunity for an interview, and certainly not one where counsel was informed or could be present.  Nor are these minimum regulatory requirements legally sufficient, *see* Point II.B below, in that these paper hearings go before the same immigration officials that decided to detain him in the first place—making them both judge and jailer.

Nonetheless, at minimum, ICE "has the duty to follow its own federal regulations." *Haoud v. Ashcroft*, 350 F.3d 201, 205 (1st Cir. 2003) (*quoting Nelson v. I.N.S.*, 232 F.3d 258, 262 (1st Cir. 2000)).  As the court in *Rombot* explained "[t]o be sure, not every procedural misstep raises a constitutional issue." *See Matias v. Sessions*, 871 F.3d 65, 72 (1st Cir. 2017) (involving an inaccurate translation).  However, where an immigration "regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute,"

---

[3] Nor was the decision to revoke Mr. Ragbir's release made by the district director, as is required by 8 C.F.R. § 241.4(l)(2). *Rombot* at *10-11 (noting that "it is not clear from the regulation…whether an ICE field office director has authority to revoke an [alien's release]").

like the opportunity to be heard, "and [ICE] fails to adhere to it, the challenged [action] is invalid

. . ." *Waldron v. I.N.S.*, 17 F.3d 511, 518 (2d Cir. 1993)." 2017 U.S. Dist. LEXIS 185244 at *12.

The Second Circuit has clearly stated that immigration regulations which are derived from and

intended to protect constitutional rights are to be liberally applied. *Waldron*, 17 F.3d at 518;

*Montilla v. INS*, 926 F.2d 162, 169 (2d Cir. 1991). In such instances, relief is automatically

warranted and the petitioner need not show prejudice. *See Fong v. Ashcroft*, 317 F. Supp. 2d 398,

403-04 (S.D.N.Y. Apr. 30, 2004) (citing *Montilla* and *Waldron*) (granting alien's habeas petition

where she was deported fewer than 72 hours after her arrest and regulation mandated 72-hour

rule); *Rombot,* 2017 U.S. Dist. LEXIS 185244 at *12 (granting release from detention because

ICE violated its own regulations).

　　　　When Mr. Ragbir was suddenly detained without cause, notice, opportunity to be heard,

or the time to prepare for an orderly departure, ICE violated its own regulatory scheme and

representations to this Court and to Mr. Ragbir. As such, Mr. Ragbir's detention should be found

to be unlawful.

### B. Revocation of Mr. Ragbir's Order of Supervision and/or Stay of Removal violates Mr. Ragbir's substantive due process rights.

　　　　The sudden revocation of Mr. Ragbir's order of supervision and/or stay of removal

without notice or an opportunity to be heard additionally deprived Mr. Ragbir of due process of

law. The Due Process clause applies to all persons in the United States, "whether their presence

here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693

(2001); *see also Yick Wo v. Hopkins*, 118 U.S. 356 (1886). Procedural due process constrains

governmental decisions that deprive individuals of property or liberty interests within the

meaning of the Due Process Clause of the Fifth Amendment. *See Matthews v. Eldridge*, 424 U.S.

319, 332 (1976); *see also Perry v. Sindermann*, 408 U.S. 593, 601–03 (1972) (reliance on

informal policies and practices may establish a legitimate claim of entitlement to a

constitutionally-protected interest). Infringing upon a protected interest triggers a right to a

hearing before that right is deprived. *See Board of Regents of State Colleges v. Roth*, 408 U.S.

564, 569–70 (1972).

Mr. Ragbir's order of supervision and stay of removal create legitimate liberty and

property interests. Although the regulatory framework suggests that stays and orders of

supervision may be rescinded at the discretion of the government, both create vested liberty and

property rights for Mr. Ragbir. First, Mr. Ragbir has a liberty interest in his freedom from

physical confinement, which his order of supervision and stay of removal help to secure. *See*

*Zadvydas*, 533 U.S. at 690 ("freedom from imprisonment – from government custody, detention,

or other forms of physical restraint – lies at the heart of the liberty [the due process] clause

protects"); *see also Lora v. Shanahan*, 804 F.3d 601, 606 (2d Cir. 2015) ("[T]he indefinite

detention of a non-citizen raises serious constitutional concerns in that freedom from

imprisonment--from government custody, detention, or other forms of physical restraint--lies at

the heart of the liberty that the Due Process Clause protects.") (internal quotations omitted);

*Foucha v. Louisiana*, 504 U.S. 71, 80 (1992).

Second, Mr. Ragbir also has a property interest in his order of supervision and stay.

Property interests "are created and their dimensions are defined by existing rules or

understandings that . . . secure certain benefits and that support claims of entitlement to those

benefits." *Board of Regents of State Colleges*, 408 U.S. at 577. Recognition of property interests

under the Constitution is meant to protect claims upon which individuals rely in their daily lives.

*Id.; see e.g., Perry v. Sinderman*, 408 U.S. 593, 603 (1972) (continued employment as a

professor may constitute a property interest requiring due process of hearing and notice, although

the tenure system was implied as a general practice and not in writing); *Spinelli v. City of New York*, 579 F.3d 160, 169 (2d Cir. 2009) (recognizing that plaintiff had a "property interest in [her] gun dealer license" sufficient "to invoke the protection of the Due Process Clause" where "the City did not have unfettered discretion" to revoke or suspend the license) (citation omitted); *Nnebe v. Daus*, 184 F.Supp.3d 54, 65 (S.D.N.Y. 2016) (drivers have a protected property interest in taxi licenses because the city agency did not have "unfettered discretion" over the suspension or revocation of licenses). Mr. Ragbir's stay and order of supervision generate a protected property interest. In order to seek his four administrative stays of removal, Mr. Ragbir completed a rigorous application process and criminal background check and paid an application fee, with the expectation of validity through at least the grant date of January 19, 2018. Ex. 1-P. Similarly, Mr. Ragbir has complied with the terms of his order of supervision since 2008, a set of procedures that have continuously provided Mr. Ragbir with work authorization since his release. Ex. 1-B; Ex. 1-O.

Infringing upon a protected interest triggers a right to a hearing before that right is deprived. *See Bell v. Burson*, 402 U.S. 535, 542 (1971) (it is fundamental that notification and the opportunity for a hearing is required *before* termination of a protected interest, absent an emergency situation). To date, ICE has not provided Mr. Ragbir with the "informal interview" required by their own regulations, much less a hearing with procedural protections before a neutral decisionmaker. However even if Mr. Ragbir is provided with such an interview, this process is deficient because it will have occurred *after* Mr. Ragbir was deprived of both his liberty and property interests, and would not be with the benefit of counsel and before a neutral

decisionmaker.[4]  The deprivation of Mr. Ragbir's protected interests occurred the moment that

he was separated from his wife, clergy, and legal representatives, placed in a holding area,

shackled and unable to leave, waiting to be put on a bus to an immigration jail cell.  Provision of

a hearing afterward does not remedy the constitutional violation.  Mr. Ragbir's detention was

thus unlawful and he should be afforded a meaningful opportunity to be heard prior to any

revocation of his order of supervision and/or administrative stay of removal.

### III. Mr. Ragbir's detention pursuant to 8 U.S.C. § 1231 is unconstitutional because he has already been detained for a prolonged period of time.

#### A. Mr. Ragbir's detention is presumptively unconstitutional because he has already been detained longer than six months.

Mr. Ragbir has already been detained for fourteen months pursuant to 8 U.S.C. § 1231,

the statute governing detention after a final order of removal has been issued. As such, his

detention is presumptively unconstitutional and in violation of the Due Process Clause,

according to the framework established in *Zadvydas v. Davis*. 533 U.S. 678, 690 (2001); *see also*

Section B(2) *supra* (discussing the liberty interest implicated by Mr. Ragbir's detention).  In

*Zadvydas*, the Supreme Court held that in the "special and narrow nonpunitive circumstances" of

immigration detention, due process requires "a special justification . . . [that] outweighs the

individual's constitutionally protected interest in avoiding physical restraint." *Id.* (internal

quotation marks omitted) (internal citations omitted).  Moreover, as detention becomes

prolonged, the Due Process Clause requires a sufficiently strong justification to outweigh the

significant deprivation of liberty, as well as procedural protections. *Zadvydas*, 533 U.S. at 690--

91; *Diop v. ICE*, 656 F.3d 221, 231 (3d Cir. 2011) (noting the historical antecedents of

---

[4] Further, the lack of formality of such an interview, betrayed by its own name as "informal", is insufficient to provide the procedural protections that follow from recognition of cognizable liberty and property rights.

14

implementing procedural protections against deprivation of liberty among citizens and noncitizens absent "'sufficiently strong special justifications'") (quoting *Zadvydas*, 533 U.S. at 690); *cf. Lora v. Shanahan,* 804 F.3d 601 (2d Cir. 2014). The *Zadvydas* Court was explicit that after six months, detention pursuant to 8 U.S.C. § 1231 would become presumptively unconstitutional, requiring a sufficiently strong justification. 533 U.S. at 701. This requires release, or at a minimum, a bond hearing if a person has been detained for six months. *See Diouf v. Napolitano*, 634 F.3d 1081 (9th Cir. 2011).

Mr. Ragbir's detention has far exceeded the six month mark beyond which the Supreme Court has held that detention is presumptively unconstitutional. Mr. Ragbir has been most recently detained since January 11, 2018. However, he is being detained as part of the same removal proceedings and removal order for which he was previously detained. Mr. Ragbir's previous detention began on May 22, 2006. Ex. 1-I (Notice of Custody Determination). He continued to be detained through and following the issuance of a final order of removal on March 14, 2007. He was released in February 2008. Ex. 1-M; Castle Decl. at ¶ 3. Thus, Mr. Ragbir has already been detained for twenty-two months, fourteen of which were post-final order. His detention now is a continuation of the same "post-removal period" as the previous fourteen months of detention. This far exceeds the six-month time period that the Supreme Court deemed presumptively reasonable in *Zadvydas*. *See Zadvydas*, 533 U.S. at 701; *see also Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2014) (holding that even prior to a final order of removal, individuals subject to mandatory detention must receive a bond hearing within six months).

The fact that the Government has re-detained Mr. Ragbir following nine years of release only strengthens Mr. Ragbir's claim of unreasonably prolonged detention. Just as it is well

established that detainees cannot run the clock in order to ripen a *Zadvydas* claim, so too is the

government prohibited from arguing that Mr. Ragbir's time of release and re-detention re-started

the clock. *See Lin v. United States*, No. CIV.A. 5:07-CV-26, 2007 WL 951618, at *3 (S.D. Tex.

Mar. 28, 2007) ("If a detention of six months is presumably reasonable in order to achieve such

ends, it hardly seems to matter under the statute *when* the government exercises that power.")

Pursuant to *Zadvydas*, Mr. Ragbir's continued, prolonged detention is thus presumptively

unconstitutional. As discussed in Section C(2), the Government is unable to provide a

sufficiently strong justification for Mr. Ragbir's detention, such as would overcome this

presumption of unconstitutionality. He should therefore be released, or at minimum, is entitled

to a bond hearing where an Immigration Judge will conduct an individualized assessment of

flight risk and danger to the community. *See Diouf v. Napolitano*, 634 F.3d 1081 (9th Cir. 2011).

> **B. The Government cannot overcome the presumption that Mr. Ragbir's
> detention is unconstitutional because his detention bears no reasonable
> relationship to any legitimate purpose.**

To comport with due process, detention must bear a reasonable relationship to its two

regulatory purposes—to ensure the appearance of noncitizens at future hearings and to prevent

danger to the community pending the completion of removal. *Zadvydas v. Davis*, 533 U.S. at

690–691 (2001); *Diop v. ICE*, 656 F.3d 221, 233–234 (3d Cir. 2011); *Gordon v. Shanahan*, No.

15-Civ-261, 2015 WL 1176706 at *10 (S.D.N.Y. Mar. 13, 2015). As discussed in Section C(1)

*supra*, such a justification for detention is required to be particularly strong once detention is

presumptively unconstitutional. In the instant case, Mr. Ragbir's detention does not bear a

sufficiently strong relationship to either regulatory purpose, as he is not a flight risk and is not a

danger to the community. Quite the opposite, Mr. Ragbir has not only complied with all

requirements of his order of supervision but has publicly stated that he intends to continue to

appear at all appointments with ICE.  Further, he is a beloved civic leader who works with faith

communities to ensure the safety of vulnerable New Yorkers.

### 1. Mr. Ragbir is not a flight risk and his redetention does not bear a sufficiently strong relationship to ensuring his appearance at future hearings.

The detention of Mr. Ragbir nine years after his release is arbitrary on its face.  When

ICE released Mr. Ragbir in February 2008, it stated that Mr. Ragbir did not commit a crime of

violence, nor was he a flight risk. Ex. 1-L.  In the interim between Mr. Ragbir's release in 2008

and his re-detention in 2018, Mr. Ragbir's conduct has confirmed this again and again.  For ten

years, Mr. Ragbir has dutifully complied with every condition of his order of supervision. Ex. 1-

P.  Indeed, he was detained while at a scheduled check-in appointment with ICE, which he

voluntarily attended.  Further, Mr. Ragbir has publicly stated on many occasions that he will not

flee from ICE, and intends to continue to check-in with ICE and comply will all requirements

placed on him.[5]  At the time of Mr. Ragbir's detention, ICE did not have any indication that Mr.

Ragbir was or is a flight risk.

### 2. Mr. Ragbir is not a danger to the community and his redetention does not bear a sufficiently strong relationship to ensuring community safety.

The Government also cannot overcome the presumptive unconstitutionality of Mr.

Ragbir's detention by showing that his detention is reasonably related to protecting the

community.  As ICE recognized in its release notification in 2008, Mr. Ragbir has not been

convicted of a violent offense. Ex. 1-K.  But for his sole nonviolent conviction in 2001, he has

had no other contact with the criminal legal system.  Not only is Mr. Ragbir not a danger to the

community, but he actively contributes to the safety and well-being of the New York

---

[5] *See* Tiziana Rinaldi, *Here's how one New Yorker is helping immigrants – himself included – with government check-ins*, PRI (Mar. 7, 2017), available at: https://www.pri.org/stories/2017-03-07/heres-how-one-new-yorker-helping-immigrants-himself-included-government-checkins.

community.  Mr. Ragbir is a pillar in his community, having dedicated his life to helping

vulnerable individuals, and to providing comfort in time of need.[6]  Since his release from

detention, he has worked tirelessly to do everything possible to positively contribute to the

community, first as an organizer at Families for Freedom, a community organization assisting

the children and spouses of deported family members, and then in his current role as Executive

Director of the New Sanctuary Coalition, a coalition of 20 faith-based organizations representing

3,000 members.  His organization provides outreach services to an estimated 700,000

immigrants and their family members.[7]  He is a beloved "spiritual and moral leader" to many

congregations throughout the city, known for his compassionate and humble nature. *See* Ex. 2 to

Mem., Letter from Brother Anthony Zuba, OFM Cap, Church of the Good Shepherd ("Mr.

Ragbir is 'an instrument of peace' in New York City").[8]

---

[6] *See* Ex. 1 to Memorandum of Law (hereinafter "Mem.") (Letter of Rev. Chloe Breyer) ("[I] have seen first-hand [Ravi's] pastoral work to provide for the basic needs of people...Ravi has provided meals for the hungry, art therapy for individuals suffering from trauma; he has supported children who are afraid to go to school, and he has always been the first to sit with a man or woman in the community who is bereaved.")

[7] Joseph Darius Jaafari, Nation Swell, "They're Helping to Keep Families Together just by Showing Up" (Sept. 14, 2017), *available at* http://nationswell.com/new-sanctuary-coalition-immigrant-support/.

[8] In addition to his direct service to vulnerable communities, Mr. Ragbir helps educate community leaders and elected officials about immigration issues, frequently gives presentations to congregations across the New York and New Jersey area, and works with elected officials in support of legislation to protect vulnerable New Yorkers. *See e.g.,* Ex. 3 to Mem., Letter from New York City Council Member Ydanis Rodriguez ("He has been asked by...members of Congress and officials with the State and City of New York for his advice, counsel, and thoughts. He is trusted and respected by many."). In recognition of his outstanding contributions, Mr. Ragbir was recently awarded the 2017 Immigrant Excellence Award by the New York State Association of Black and Puerto Rican Legislators, a non-political charitable organization, given to those who show "deep commitment to the enhancement of their community." Castle Decl. at ¶ 14. He was also awarded the 2017 ChangeMaker Award by South Asian Americans Leading Together (SAALT) for his "tremendous sacrifice, fierce advocacy, and fearless leadership" in the immigrant community. Id.

Thus, DHS's justification for Mr. Ragbir's current detention cannot be based on any new criminal convictions or non-compliance with his order of supervision.  Without any explanation or new basis for why Mr. Ragbir is now subject to detention—when ten years ago, he was released—his continued detention is arbitrary and violates due process.

### 3. The government has not demonstrated that Mr. Ragbir's removal is reasonably foreseeable.

The government has not demonstrated that Mr. Ragbir's removal is reasonably foreseeable, as is required by *Zadvydas*. 533 U.S. at 701.  Upon information and belief, Respondents do not possess a valid travel document from Trinidad and Tobago, despite Mr. Ragbir's removal order having been deemed final since 2007, and Mr. Ragbir's compliance with Respondent's requests regarding this matter.  Further, Mr. Ragbir has been complying with all the conditions of his release and receiving work authorization pursuant to 8 U.S.C. § 1231(a)(7) and 8 C.F.R. § 274a.12(c)(18) since his release in 2008. *See* Ex. 1-B; *see also* Ex. 1-P.  The grants of work authorization by definition represent a finding by the federal government that Mr. Ragbir's removal is impracticable and/or contrary to the public interest. 8 U.S.C. § 1231(a)(7); 8 C.F.R. § 274a.12(c)(18).  In light of Respondents' failure to obtain such a travel document in a decade, and their failure to produce such a document upon detaining Mr. Ragbir, Respondents have not demonstrated the likelihood that such a travel document could be acquired in the reasonably foreseeable future.

An individual such as Mr. Ragbir, who has been detained ten years after his release and has not only reintegrated into his community but actively contributes to the well-being and civic health of the community, should not be subject to detention without a bond hearing.  His detention is presumptively unconstitutional, and the government has failed to rebut that presumption by articulating any legitimate purpose, much less satisfying the strong justification

required by *Zadvydas*, with which Mr. Ragbir's continued detention comports.  In order to refrain from continuing the unconstitutional detention of Mr. Ragbir, this Court should order Mr. Ragbir's immediate release from detention or an individualized bond hearing before an Immigration Judge.

### IV. Post Order Custody Review is constitutionally inadequate and therefore Mr. Ragbir's detention without a bond hearing raises serious constitutional concerns.

For all of the above reasons, Mr. Ragbir's detention raises serious constitutional concerns. *See* Point B(2) and Point C(1), *supra*. The administrative post-order custody reviews ("POCR") provided for in 8 C.F.R. § 214.4 are constitutionally inadequate and do not remedy the serious due process concerns implicated by his continued detention. POCR is nothing more than a cursory paper review. *See e.g., Bourguignon v. MacDonald*, 667 F. Supp. 2d 175, 177 (D. Mass. 2009) (Petitioner's custody review involved no face-to-face interview); *D'Alessandro v. Mukasey*, 628 F. Supp. 2d 368, 393 (W.D.N.Y. 2009) (noting of custody review that "there is no serious way that this can be read as a 'decision specific to the alien's circumstances'" when there was no discussion of Petitioner's circumstances, release criteria, or relevant factors for consideration).  Numerous courts have held that these cursory paper reviews do not pass constitutional muster.  As the Ninth Circuit explained, this review process falls "far short of the procedural protections afforded in ordinary bond hearings, where aliens may contest the necessity of their detention before an immigration judge and have an opportunity to appeal that determination to the BIA." *Casas-Castrillon v. DHS*, 535 F.3d 942, 951 (9th Cir. 2008) (requiring individualized bond hearings because of the constitutional inadequacy of administrative custody review in the pre-final order context); *see also Diouf v. Napolitano*, 634 F.3d 1081 (9th Cir. 2011) (extending *Casas-Castrillon* to the post-final order context);

*D'Alessandro v. Mukasey*, 628 F. Supp. 2d 368, 377 (W.D.N.Y. 2009) (finding DHS' review of Petitioner's custody to be "grossly defective in constitutional terms"); *Wilks v. U.S. Dep't of Homeland Sec.*, No. 1:CV-07-2171, 2008 U.S. Dist. LEXIS 88587, at *8 (M.D. Pa. Nov. 3, 2008) (custody reviews of Petitioner's detention did not satisfy due process concerns because review was not meaningful).

Should this Court deny Mr. Ragbir a bond hearing, his sole mechanism for requesting release from detention is these cursory paper reviews under POCR.  During such reviews, ICE retains the authority to deny him release based on specious findings that he presents a danger and a flight risk because of his criminal history—an immutable fact for Mr. Ragbir and so many detainees similarly situated.  This type of review does not provide adequate procedural safeguards to satisfy due process concerns.  Contrastingly, at a bond hearing, Mr. Ragbir would be able to be represented by his counsel, testify on his own behalf, and present witnesses and other evidence before an impartial Immigration Judge.  Because Mr. Ragbir's detention has been unaccompanied by the procedural protections that such a significant deprivation of liberty requires under the Due Process Clause of the Fifth Amendment to the U.S. Constitution, his continued detention without a bond hearing is unlawful.

**V. This Court should enjoin Respondents from transferring Mr. Ragbir outside the jurisdiction of the New York Field Office and issue a temporary stay of removal pending resolution of this case.**

In addition to ordering Mr. Ragbir be released from custody or provided a bond hearing, this Court should issue a temporary preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure to restrain Respondents from removing Mr. Ragbir from the jurisdiction of the New York Field Office of the Office of Enforcement and Removal Operations for the pendency of this petition, as well as a temporary stay of removal.

Upon information and belief, Mr. Ragbir is currently being detained by ICE at 26 Federal

Plaza, New York, NY and will soon be brought to Varick Service Processing Center to

determine which facility in the jurisdiction of the New York Field Office to hold him.  However,

after that initial placement, ICE frequently transfers detained immigrants who have a final order

of removal between facilities, frequently far away from their counsel and family.[9]  Indeed,

during Mr. Ragbir's prior detention for twenty-months, he was transferred from Bergen County

Jail in Hackensack, New Jersey (a facility tied to the New York Field Office) to Perry County

Correctional Facility in Uniontown, Alabama.  Languishing in detention will cause enormous

harm.  And should ICE eventually effectuate his removal before his claims related to the

unlawful revocation of his administrative stay and order of supervision are adjudicated, the harm

to Mr. Ragbir may be irreversible.

A party seeking a preliminary injunction typically must demonstrate irreparable injury

absent injunctive relief and either (1) a likelihood of success on the merits or (2) a serious

question going to the merits to make them a fair ground for litigation with a balance of hardships

tipping decidedly in the movant's favor. *See Citigroup Global Mkts., Inc. v. VCG Special

Opportunities Master Fund Ltd.*, 598 F.3d 30 (2d Cir. 2010).  Where a moving party challenges

government action taken in the public interest pursuant to a statutory or regulatory scheme, the

moving party must show a likelihood of success on the merits. *See Jolly v. Coughlin*, 76 F.3d

468, 473 (2d Cir. 1996).

A party seeking a stay of removal typically must demonstrate four factors: (1) whether

---

[9] *See generally* Human Rights Watch, *Locked Up Far Away: The Transfer of Immigrants to Remote Detention Centers in the United States*, Dec. 2, 2009 (documenting the frequent transfer of immigrant detainees as a tool of immigration control); Human Rights Watch, *A Costly Move: Far and Frequent Transfers Impede Hearings for Immigrant Detainees in the United States*, June 14, 2011 (documenting 2 million detainee transfers occurring between 1999 and 2008).

the stay applicant demonstrates a strong likelihood of success on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Nken v. Holder*, 556 U.S. 418, 434 (2009).  Courts may grant stays in the "exercise of judicial discretion" based on "the circumstances of the particular case." *Nken*, 556 U.S. at 433 (internal quotations and citations omitted).  Of these, the "first two factors" are "the most critical," id., at 434, and the latter two "merge when the Government is the opposing party," id., at 435.

Both standards, which have overlapping requirements, are met here.

**1.  Mr. Ragbir will suffer irreparable injury if he is transferred to a facility outside of the jurisdiction of the New York City ICE Field Office or removed from the United States.**

Transfer of Mr. Ragbir from the New York City area to a distant detention facility or deportation from the United States would cause irreparable harm to him and his family. Irreparable harm is one that cannot be redressed through a monetary award. *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990).  The severe impediment that transfer to a distant facility would place on Mr. Ragbir's ability to communicate with his counsel and family, or his removal from the United States, would be irreparable injury that cannot be cured by a monetary award.

Both Mr. Ragbir's family and counsel reside in New York City.  If Mr. Ragbir is transferred to a facility far from New York City, he will be irreparably harmed because he will lose the ability to effectively and confidentially communicate with his counsel, and his family will be unable to visit him in detention.  Mr. Ragbir has been represented pro bono by undersigned counsel and the NYU School of Law Immigrant Rights Clinic for the past ten years.

Counsel will be unable to physically visit Mr. Ragbir in a facility outside of the New York/New Jersey area.  Additionally, the facility that Mr. Ragbir is detained in may not provide confidential phone calls to counsel.  Mr. Ragbir has a right to effective and confidential communication with his counsel; to deprive him of such would severely impede his ability to meaningfully participate in the instant proceedings.  These harms would only be amplified if Mr. Ragbir is removed from the United States; in such a case, counsel would unable to communicate effectively with Mr. Ragbir at all.

In addition to the instant proceedings, Mr. Ragbir has a pending petition for a writ of coram nobis in the District Court of New Jersey, petitioning the court to vacate his conviction in its entirety or alternatively to vacate his sentence and order a factual *Fatico* hearing on loss.  This case has been fully briefed and will be decided in the near future.  Should Mr. Ragbir be successful in this petition, his presence is necessary to his meaningful participation in the re-trial or re-sentencing proceedings.  Not only will Mr. Ragbir's ability to communicate with his counsel be impeded for all the reasons discussed *supra,* but there is also no assurance that ICE will be willing and able to transport him from a distant detention facility to the District Court of New Jersey in order to appear for these proceedings.  Nor does ICE have a policy of producing immigrants whom it removes from the United States altogether even if a court requires a hearing to adjudicate a claim that could restore their right to status in this country. *See Nancy Morawetz*, "Convenient Facts: *Nken v. Holder*, The Solicitor General, and the Presentation of Internal Government Facts", 88 N.Y.U. L. Rev. 1600 (Nov. 2013).

Mr. Ragbir will additionally suffer irreparable injury if he is forcibly separated from his family either by transfer or removal.  His wife, Amy Gottlieb, lives in their shared home in Brooklyn, NY and is the Associate Regional Director of the American Friends Service

Committee, a Quaker nonprofit organization. She will be unable to visit with him regularly if he is transferred given her commitments to the New York region. Additionally, his extended family resides in the New York and New Jersey area and will be unable to visit with him. Prolonged physical separation from his family will severely strain Mr. Ragbir's relationship with his family and potentially cause mental trauma to him, as is evidenced by the year he was detained in Alabama. The year that Mr. Ragbir was previously detained in Alabama was devastating to him; during that year, he was never able to see his daughter, and his wife at the time divorced him. While he has spent the past ten years rebuilding his relationship with his daughter, it would be extremely injurious to their relationship for this traumatic and painful experience to be repeated. These harms would only be amplified if Mr. Ragbir is removed from the U.S., given the lack of a return policy.

### 2. Mr. Ragbir has established a likelihood of success on the merits of his petition for habeas corpus relief.

As detailed *supra* and in the Petition for a Writ of Habeas of Corpus, Mr. Ragbir presents five challenges to his detention which independently or in concert are a sufficient showing of a likelihood of success on the merits. *Compare Nken*, 556 U.S. at 434 (requiring "more than a mere possibility of relief) *and Basic v. Steck*, 2015 U.S. Dist. LEXIS 106538 (E.D. Ken. Aug. 12, 2015) (requiring a movant to merely advance legal arguments that, if the reviewing court accepts, could be dispositive) (citing *Hilton v. Braunskill*, 481 U.S. 770, 778 (1987)). Further, the degree of the likelihood of success that must be demonstrated is inversely proportional to the amount of irreparable injury the applicant shows he will suffer absent the stay. *See Thapa v. Gonzales*, 460 F.3d 323, 334 (2d Cir. 2006). Given the statutory, regulatory, and constitutional violations implicated by Respondent's detention of Mr. Ragbir, as well as the well-established

case law holding that Mr. Ragbir's prolonged detention is unconstitutional under *Zadvydas*, Mr.

Ragbir has met this requirement for relief.[10]

Mr. Ragbir will be irreparably injured should he be transferred to a distant detention

facility for the duration of the instant proceedings and has established a likelihood of success on

the merits of this petition. He respectfully urges this Court to issue a temporary preliminary

injunction enjoining Respondents from removing Mr. Ragbir from the jurisdiction of the New

York Field Office of the Office of Enforcement and Removal Operations for the pendency of this

petition.

## CONCLUSION

For the foregoing reasons, this Court should grant Mr. Ragbir's habeas petition and order

the Government to either immediately release Mr. Ragbir on reasonable conditions of

supervision or provide him with a constitutionally adequate bond hearing before an impartial

adjudicator where the Government bears the burden of establishing that his continued detention

is justified. The Court should further enjoin Respondents from removing Mr. Ragbir from the

jurisdiction of the ICE New York City Field Office and issue a temporary stay of removal for the

duration of the instant proceedings.


Dated: New York, NY                          Respectfully submitted,
      January 11, 2018

                                    /s/ Alina Das
                                    ALINA DAS, Esq. (AD8805)
                                    JESSICA ROFÉ, Esq. (JR5231)
                                    Brittany Castle, Legal Intern

---

[10] If this Court were to consider the balance of hardships, this would clearly tip in favor of Mr.
Ragbir. As discussed in Section E.1 *supra*, the hardship to Mr. Ragbir of being transferred
outside of the New York City jurisdiction or removed would be significant. In contrast, the
hardship to Respondents would be de minimis.

Jeremy Cutting, Legal Intern
Immigrant Rights Clinic
Washington Square Legal Services, Inc.
245 Sullivan Street, 5th Floor
New York, New York 10012
(212) 998-6430

*Counsel for Petitioner*