UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**Ravidath Lawrence RAGBIR**

       Petitioner

vs.

**Jefferson SESSIONS III, in his official capacity as the Attorney General of the United States; Kirstjen NIELSEN in her official capacity as Secretary of Homeland Security; Thomas DECKER, in his official capacity as New York Field Office Director for U.S. Immigration and Customs Enforcement; Scott MECHKOWSKI, in his official capacity as Assistant New York Field Office Director for U.S. Immigration and Customs Enforcement; and the U.S. DEPARTMENT OF HOMELAND SECURITY.**

       Respondents

Case No.: 1:18-cv-236 (KBF)

PETITIONER'S REPLY IN SUPPORT OF AMENDED PETITION FOR WRIT OF HABEAS CORPUS

Detention is not a requirement of deportation. To the contrary, detention is a deprivation of liberty that carries with it serious consequences independent of any decision to deport.[1] The Government ignores this distinction by focusing solely on Mr. Ragbir's 2007 deportation order and the existence of a travel document, which does nothing to change their assessment of Mr. Ragbir's flight risk and dangerousness. The Government provides no independent—let alone constitutionally adequate—justification for Mr. Ragbir's current detention. Mr. Ragbir's current detention serves only to take away the liberty of an outspoken immigrant rights activist, separating him from his family and community and jeopardizing his ability to pursue pending legal avenues for relief. Because "[f]reedom from imprisonment . . . lies at the heart of the liberty [the Due Process] Clause protects," *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001), this Court should reject the Government's arguments and hold that Mr. Ragbir be immediately released and declare that any revocation of his order of supervised release was unlawful without a constitutionally adequate hearing. If, after such a hearing, it is determined that revocation is proper, Mr. Ragbir should be provided with an orderly departure.

An orderly departure, commonly provided to noncitizens by sending a Form I-166 (colloquially referred to as a "bag and baggage letter"), is a process by which ICE directs an individual to appear for removal at a particular date and time.[2] When an individual is ordered removed and either was never detained or has been previously released from custody, it is

---

[1] Immigrants in detention, including Mr. Ragbir, are frequently detained in county jails. They are held behind bars and put "in orange suits, they are shackled during visitation and court visits, they are subject to surveillance and strip searches, they are referred to by number, not by name." Transcript of Oral Argument at 8, *Jennings v. Rodriguez*, No. 15-1204 (Nov. 30, 2016) (J. Sotomayor). Even though Mr. Ragbir has been moved from Florida to New York, he is being detained approximately two hours away from his wife, colleagues, and community. His detention is arbitrary and unnecessary, wastes resources, and is a double punishment.

[2] A bag and baggage order "issues once the government determines that there is no further administrative relief available to an alien who is subject to an order of removal, and instructs the alien to appear at a specified location and time for removal." *Singh v. Gonzales*, 494 F.3d 1170, 1772 n.3 (9th Cir. 2007).

standard for ICE to provide the individual with an orderly departure[3], as this process saves enforcement and detention resources, and affords an individual the opportunity to put their affairs in order and pursue any further relief for which they may be eligible. Instead of following this common and humane removal procedure, ICE arbitrarily arrested Mr. Ragbir at his check-in on January 11th, handcuffed him in front of his wife and attorney, hastily shuttled him to Miami for detention, without any assertion that he was a flight risk or danger. In doing so, ICE violated its own regulations, statutory authority, and Mr. Ragbir's constitutionally protected rights.

**I.     When the Government redetained Mr. Ragbir, it violated its own procedures, regulatory and statutory authority, and the Constitution.**

In abruptly arresting and redetaining Mr. Ragbir, the Government violated its own regulations, procedures, and prior written commitments to provide him with an orderly departure. Mr. Ragbir was released from detention on an order of supervision ("OSUP") in 2008 after findings were made "pursuant to 8 CFR 241.4" that, despite ICE's potential access to a travel document, Mr. Ragbir "did not commit a crime of violence and does not appear to be a flight risk" and thus merited release on specific conditions. ECF No. 1-12; ECF No. 1-14; 8 U.S.C. § 1231(a)(3) (authorizing supervised release pursuant to reasonable conditions).[4]

---

[3] *See* Detention and Deportation Officer's Field Manual, *Chapter 11.6 "Docket Management of Non-Detained Cases"*, available at https://www.ice.gov/doclib/foia/dro_policy_memos/09684drofieldpolicymanual.pdf (instructing ICE officers to "prepare…Form I-166, Notice to Deportable Alien to Surrender" if removal is ordered by an immigration judge and no appeal is pending); The Legal Aid Society, *Immigration Detention and Removal: A Guide for Detainees and their Families* (Oct. 2004), available at https://www.shusterman.com/pdf/detention1004.pdf ("If DHS can remove you, you will be sent a "bag and baggage" order requiring you to appear at DHS on a certain date for removal); *see e.g.*, *Coleman v. United States*, 454 F. Supp. 2d 757, 762 (N.D. Ill. 2006) (describing typical procedural history in which ICE declined to grant a stay of removal and provided Petitioner with a bag and baggage letter); *Devitri v. Conen*, No. 17-11842-PBS (D. Mass. Sept. 26, 2017) (describing procedural history in which Petitioners were provided with letters at OSUP check-ins instructing them to report back in 30 days showing purchase of airline tickets for departure within 30 days).

[4] Mr. Ragbir's release was not pursuant to a finding that his removal was not imminent. As the worksheet notes, ICE had contacted the Trinidadian consulate, which indicated that it would provide a travel document once Mr. Ragbir's Second Circuit appeal was decided. Prior worksheet noted that Mr. Ragbir's removal was imminent at all times and that a travel document was readily attainable. Mr. Ragbir's Second Circuit appeal was decided in 2010, however no travel document was obtained at that time, and he remained on his OSUP.

Any decision to revoke release pursuant to § 241.4 is reserved for the Executive Associate Commissioner, based on specific findings. 8 C.F.R. § 241.4(l)(2); *see also* 8 U.S.C. § 1231(a)(3) (specifying terms of supervision).[5] A District Director instead may revoke only when "revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner." *Id.* Federal regulations further require ICE to provide notice "of the reasons for revocation," to provide "an initial informal interview promptly . . . to afford the alien an opportunity to respond to the reasons for revocation," and to be given the opportunity to submit evidence and contest alleged facts. 8 C.F.R. § 241.4(l)(1)-(3); *see also* 8 C.F.R. § 241.13(i)(3).[6] The Government does not contest that, in its haste to detain Mr. Ragbir, it unlawfully bypassed all of these procedural requirements.[7]

---

[5] To the extent federal regulations can be read to permit revocation on grounds not found in the statute, those provisions would be *ultra vires*. The statute provides specific terms of supervised release, and does not authorize the revocation of release unrelated to those terms. *See* 8 U.S.C. § 1231(a)(3) (specifying supervised release terns); § 1231(a)(6) (specifying that individuals "if released, shall be subject to the terms of supervision in [(a)(3)]").

[6] 8 C.F.R. § 241.13(i) provides similar procedural protections related to notice and an opportunity to be heard with respect to the revocation of release based on "changed circumstances" relating to the likelihood of removal. It does not govern the revocation of release orders based on a lack of flight risk or dangerousness, however. It explicitly states that: "Section 241.4 shall continue to govern the detention of aliens under a final order of removal, including aliens who have requested a review of the likelihood of their removal under this section, unless the Service makes a determination under this section that there is no significant likelihood of removal in the reasonably foreseeable future. *The Service may release an alien under an order of supervision under § 241.4 if it determines that the alien would not pose a danger to the public or a risk of flight, without regard to the likelihood of the alien's removal in the reasonably foreseeable future.*" § 241.13(b) (emphasis added).

[7] The Government conceded that this Court has jurisdiction to review Mr. Ragbir's claims that Respondents failed to follow the law in revoking Mr. Ragbir's OSUP, *see* Transcript of Oral Argument at 20-21, but now argues that 8 U.S.C. § 1252(a)(2)(B)(ii) strips this Court of jurisdiction to hear a challenge to the "substance" of Respondents' decision to revoke Mr. Ragbir's release. Resp't Br. at 7. While this Court need not address the "substance" of the Respondents' revocation in order to grant Mr. Ragbir the relief he seeks, the Government's jurisdiction-stripping argument is incorrect for two reasons. First, nothing in § 1231(a)(6) authorizes the government to revoke release without cause, let alone places such revocation decisions in ICE's unfettered discretion. *See* 8 U.S.C. § 1231(a)(6) (specifying only that noncitizens who are released "shall be subject to the terms of supervision" with no reference to revocation). Second, even if this Court were to find that Congress had "specified" revocation discretion explicitly and exclusively to the Attorney General, § 1252(a)(2)(B)(ii) does not and cannot bar judicial review of constitutional claims or violations of law. *Wong v. United States*, 373 F.3d 952, 963 (9th Cir. 2004) ("[D]ecisions that violate the Constitution cannot be 'discretionary,' so claims of constitutional violations are not barred by § 1252(a)(2)(B)."). In any event, Mr. Ragbir's claims focus on the Government's failure to abide by Constitutional, statutory, and regulatory requirements governing the process of revoking his OSUP and ongoing detention, claims over which jurisdiction is undisputed. *Zadvydas*, 533 U.S. at 687.

First, Deputy Field Office Director Scott Mechkowski's decision to revoke Mr. Ragbir's release violated § 241.4(l)(2) because he is neither the Executive Associate Commissioner nor the District Director. *See* ECF No. 33-3 (filed by counsel for Respondents). Second, the Government failed to provide Mr. Ragbir and his counsel with any notice of the reasons for revocation, as required under the regulations. *See* Ex. A, Declaration of Alina Das, ¶¶ 19-21 ("Das Decl."). Third, at no point has anyone from ICE approached Mr. Ragbir for an interview, informal or otherwise. *See id.* at ¶ 34. Fourth, without the necessary notice or interview, Mr. Ragbir was deprived of his opportunity to respond to and challenge the allegations underlying the revocation.[8] The decision to abruptly detain Mr. Ragbir also violated the written terms of his Release Notification, which promised him "an opportunity to prepare for an orderly departure," provided he complied with the conditions of his release. ECF No. 1-14. The Government's decision to suddenly redetain Mr. Ragbir abandoned this longstanding agreement.[9]

Thus Mr. Ragbir did not receive notice, cause, an opportunity to be heard, or an orderly departure. Where DHS fails to adhere to its own regulations, and the regulations in question were intended to bolster constitutional principles, relief is automatically warranted, and the noncitizen need not show prejudice. *Waldron v. INS*, 17 F.3d 511, 518 (2d Cir. 1994); *Montilla v. INS*, 926

---

[8] The Government declines to address these violations, which, regardless of any statutory or constitutional arguments, form independent grounds for relief. However, to the extent that the Government suggests that Mr. Ragbir's January 11 check-in satisfied the required procedures, they would be incorrect. At no point during Mr. Ragbir's check-in did Deputy Director Mechkowski give Mr. Ragbir or his attorney any paperwork regarding any revocation of Mr. Ragbir's OSUP, state that he had revoked the order, or provide the basis for any such decision. Deputy Director Mechkowski refused to provide Mr. Ragbir or his attorney with any reasons for or information about Mr. Ragbir's redetention, repeating only that he was enforcing the removal order before declaring "I need to cool off" and leaving the room. Das Decl. ¶ 21. This one-sided interaction with an individual who has no authority to revoke an OSUP did not provide any rationale for ICE's decision, much less an opportunity to respond or present evidence, and so it cannot possibly comport with procedural requirements.

[9] Further regulatory violations would have occurred had a temporary stay not issued. The Government concedes that it would otherwise have deported him on January 12, 2018, in violation of 8 C.F.R. §§ 241.22 and 241.33(b) (preventing removal within 72 hours of arrest). The government's assertion that the 72-hour rule does not apply to cases initiated after IIRIRA is incorrect. *See Ying Fong v. Ashcroft*, 317 F. Supp. 2d 398, 403-04 (S.D.N.Y. 2004) (72-hour rule applies to post-IIRIRA cases).

F.2d 162, 169 (2d Cir. 1991); *see also Bonitto v. Bureau of Immigration & Customs Enforcement*, 547 F. Supp. 2d 747, 757 (concluding that because §§ 241.4 and 241.13 "confer important rights upon aliens ordered removed, DHS is bound by these regulations").[10]

Yet the Constitution requires more than the regulations provide. *See Zadvydas*, 533 U.S. at 690; *Diouf v. Napolitano*, 634 F.3d 1081, 1090 (9th Cir. 2011) ("We may not defer to DHS regulations interpreting § 1231(a)(6), however, if they raise grave constitutional doubts."). For ten years, Mr. Ragbir has complied with every condition of his OSUP, including reporting to the New York ICE Field Office as requested on no fewer than 16 occasions. *See* ECF No. 32. at ¶¶ 11-45; ECF No. 1-16. This order conveyed a liberty interest,[11] the potential deprivation of which triggers the protection of the Due Process Clause.[12] "The Supreme Court has recognized that an 'alien may no doubt be returned to custody upon a violation of [supervision] conditions,' but it has never given ICE a carte blanche to re-incarcerate someone without basic due process protection." *Rombot v. Souza*, 2017 U.S. Dist. LEXIS 185244, *13-14 (D. Mass. Nov. 8, 2017)

---

[10] No meaningful changes have taken place in Mr. Ragbir's eligibility for release, as he continues to comply with every release condition. The Government does not allege that he presents a danger to the community or a flight risk or that his release is now contrary to the public interest. Only the government's circumvention of these procedural protections allows this seemingly arbitrary decision to stand.

[11] The Government misstates the nature of Mr. Ragbir's interest, alleging that he has no "constitutionally protected interest in discretionary forbearance from removal." Resp't Br. 7. In fact, Mr. Ragbir does not ask this court for relief from removal. Because the Government mischaracterizes Mr. Ragbir's claims, the cases to which it cites are inapposite. *Yuen Jin v. Mukasey*, 538 F.3d 143, 157 (2d Cir. 2008) (grant of asylum); *Ashki v. INS*, 233 F.3d 913, 921 (6th Cir. 2000) (suspension of deportation); *Ragbir v. Lynch*, 640 Fed. App'x 105 (2d Cir. 2016) (adjustment of status). Mr. Ragbir's liberty interest lies in being free from detention and is protected by Due Process irrespective of removability (as described above, an individual on supervised release can ultimately be removed without being detained). The Government's reliance on a 1964 decision, *Wong Hing Fun v. Esperdy*, 335 F.2d 656, 657 (2d Cir. 1964), is flawed. *Hing Fun* deals with inadmissible individuals paroled into the U.S. for physical entry but not lawfully admitted. *Id.* They were thus, at the time of the decision, treated differently under the law than people lawfully admitted who subsequently faced detention and deportation. Indeed, the court held that the Fifth Amendment did not apply to the paroled petitioners based on the fact that they were "subject to the exclusion rather than the expulsion provisions of the statute." *Id.* at 657. To the extent that *Hing Fun* even remains good law after *Zadvydas* and its progeny (recognizing due process rights for all detained noncitizens), it certainly does not stand for the proposition that those facing revocation of an OSUP fall outside the Due Process Clause.

[12] Mr. Ragbir's stay of removal conveyed a liberty and property interest revoked without due process, *see* ECF No. 21 at ¶¶ 43-44, but this exists independently from the OSUP. *See* Das Decl. ¶ 5-6 (noting that stays and orders of supervision serve different purposes, are governed by different regulations, and exist independently of each other).

(citing *Zadvydas*, 533 U.S. at 700); *see also Haynes v. Dep't of Homeland Sec.*, 3:CV-05-0339, 2005 WL 1606321, *5 (M.D. Pa. July 8, 2005) (referring to "the constitutional command that liberty be taken away only for appropriate reasons and only after the affected individual has been afforded a meaningful opportunity to be heard.").

The regulations governing release revocation are constitutionally inadequate under *Mathews* for three reasons: (1) they do not provide for a formal hearing with counsel before revocation; (2) they do not explicitly place the burden on the government to justify its decision under the regulations; and (3) they do not provide for a decision by a neutral arbiter. *Mathews v. Eldridge*, 424 U.S. 319 (1976); *see also Boddie v. Connecticut*, 401 U.S. 371, 379 (1971) (holding that, "except for extraordinary situations," a person must be afforded an opportunity for a hearing *before* he is deprived of a protected interest"; *Goldberg v. Kelly*, 397 U.S. 254, 270 (1970) ("the right to be heard necessarily contemplates the right to be heard by counsel"). Liberty is one of the most precious interests under our Constitution.[13] The risk of erroneous deprivation of that liberty in an "informal interview," assuming one is provided, is intolerably high. Where ICE has already granted an individual an OSUP having determined they pose no danger or flight risk, the additional requirement of a formal hearing before revocation is reasonable.

II.     **Mr. Ragbir's current and continued detention is unlawful.**

To date, the Government has failed to provide any non-arbitrary basis for Mr. Ragbir's detention, in violation of the INA and the Constitution. As an initial matter, the Government

---

[13] The revocation also deprived Mr. Ragbir of a property interest in the employment authorization he held through his OSUP. *See* ECF No. 1-3. A property interest exists where regulations "meaningfully channel[] official discretion by mandating a defined administrative outcome." *Kapps v. Wing*, 404 F.3d 105, 113 (2d Cir. 2005). Mr. Ragbir's authorization, renewed continuously, constituted a property interest requiring the Attorney General to make "a specific finding" that his removal was "impracticable or contrary to the public interest." 8 U.S.C. § 1231(a)(7)(B).

6

states that the 90-day removal period ended long ago. Resp't Br. 15. 8 U.S.C. § 1231(a)(6) provides that ICE may detain someone past the removal period upon a finding that they are "a risk to the community or unlikely to comply with the order of removal." The Supreme Court in *Zadvydas* holds that immigration detention is constitutional only on the basis of these twin justifications (danger and flight risk). 533 U.S. at 690. Here, by the Government's own findings and concessions, Mr. Ragbir is neither a danger nor a flight risk.[14] ECF No. 1-12; 1-14. Thus, his detention serves no legitimate purpose.

The Government's argument that Mr. Ragbir's detention is authorized by *Zadvydas* because his removal is reasonably foreseeable turns *Zadvydas* on its head. The unlikelihood of removal in the reasonably foreseeable future certainly undermines a finding that detention is justified to effectuate deportation. But the converse (that removal may be effectuated) does not suddenly justify detention for one who has been independently deemed to pose no risk of flight or dangerousness.[15] Even if removal is reasonably foreseeable, detention is inappropriate if it is not necessary to assure "presence at the moment of removal." *Zadvydas*, 553 U.S. at 699.

However, irrespective of the availability of a travel document—which the Government purportedly has had access to for over a decade—the Government made the finding that Mr. Ragbir is not a flight risk or danger and thus his release was justified in 2008. ECF No. 1-14. Nothing has changed in the ten years since except Mr. Ragbir's prominence in the immigrant

---

[14] Since his 2001 conviction for the non-violent crime of wire fraud, Mr. Ragbir has never been arrested, charged, or convicted of another crime. He has complied with every term of his release, as evidenced by the Government's Declaration, ECF No. 32, showing his history of reporting to ICE, including appearing for his check-in appointment.
[15] The petitioners in *Zadvydas* were deemed to be dangers to the community by ICE. 533 U.S. at 684-85. The petitioners did not challenge those findings but argued that detention served no purpose in their case because they could not be removed in the reasonably foreseeable future. The Court thus addressed this aspect of detention, while upholding the primary principle that immigration detention is only justified when necessary to ensure someone's presence at the moment of removal and to protect the community. 533 U.S. at 699.

rights movement.[16] He continues to abide by all conditions of supervision and pursue his legal avenues for relief. Since Mr. Ragbir is not a flight risk or danger, this Court should find his continued detention unlawful and inappropriate, ordering his immediate release from detention.

Even if the reasonable foreseeability of removal based on the existence of a travel document were sufficient to justify detention Mr. Ragbir has provided "evidence of a good reason" to believe his removal is not reasonably foreseeable, and the Government has not adequately rebutted that showing. *Zadvydas*, 533 U.S. at 701. The Government has stated that it will not seek a travel document until Mr. Ragbir's stay of removal expires. ECF No. 32 at ¶ 52. Mr. Ragbir has three pending legal matters challenging the validity of the basis for removal.[17] Mr. Ragbir sought a stay of removal related to two of these cases, in order to protect his ability to access the courts and continue to meaningfully participate in these matters. Mr. Ragbir has a stay of removal from the District Court of New Jersey valid until at least February 9, 2018, subject to the Court's determination whether a longer stay is needed to protect its jurisdiction over Mr. Ragbir's pending petition for a writ of coram nobis. Ex. D, D.N.J. Order. Mr. Ragbir also sought a stay of removal from the Board of Immigration Appeals ("BIA"), which is pending and would, if granted, last for the duration of the pending motion to reopen.[18]

---

[16] Mr. Ragbir's role as a prominent immigrant rights activist raises serious First Amendment concerns about whether his detention was politically motivated. *See* Das Decl.; Ex. B, Declaration of Rev. Juan Carlos Ruiz ("Ruiz Decl."). *See Demore v. Kim*, 538 U.S. 510, 532-33 (2003) (Kennedy, J., concurring) ("[s]ince the Due Process Clause prohibits arbitrary deprivations of liberty", "it could become necessary . . . to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons.").

[17] Mr. Ragbir's Motion to Reopen his proceedings, was pending for approximately one month as a request to ICE's Office of Chief Counsel to join in the motion. This request was denied at 10:03 am on January 11, 2018 via email, which counsel did not receive until after the check-in. The Motion to Reopen was formally filed with the BIA at approximately 11:00 am that same day. Mr. Ragbir's petition for coram nobis and pardon application had been pending for many months prior to the check-in date.

[18] The Government correctly points out that Mr. Ragbir was previously detained for approximately 10 ½ months after his order of removal became administratively final (calculated from the date that his appeal was denied by the BIA). Mr. Ragbir has now been detained for 22.5 months in total, 11 of which are pursuant to § 1231, which is well beyond the 6-month period of presumptive constitutionality. Contrary to the Government's assertion, Resp't Br. 16, Mr. Ragbir's current detention should be considered a continuation of his previous detention. Am. Pet. ¶ 49; *Lin v.*

Having a stay of removal does not preclude a detained petitioner from the protections of *Zadvydas*. *See Ly v. Hansen*, 351 F.3d 263, 272 (6th Cir. 2003) (one cannot be "detained [indefinitely] merely because he seeks to explore avenues of relief that the law makes available to him"); *Neziri v. Johnson*, 187 F. Supp. 3d 211, 216 (D. Mass. 2016) ("[A petitioner] seeking avenues of relief that he is entitled to seek does not exempt his detention from the constitutional requirement of reasonableness"); *Oyedeji v. Ashcroft*, 332 F. Supp. 2d 747, 753 (M.D. Pa. 2004) ("[T]he price for securing a stay of removal should not be continuing incarceration."). Unlike the cases cited by the Government, Mr. Ragbir did not file subsequent appeals after his arrest and merely to delay his deportation;[19] rather, he pursues the meritorious challenges to his removal that ICE knew were pending at the time of his arrest. His decision to pursue these matters is not a "self-inflicted wound" making him ineligible for the constitutional protections implicated by his detention. The stay of removal protecting Mr. Ragbir's meritorious challenges to his removal thus provides good reason why his removal is not reasonably foreseeable.

There is also good reason to believe that, even if his stays of removal expire, the Trinidadian consulate will not issue a second travel document to ICE so long as Mr. Ragbir's other legal challenges are pending, as was its policy when Mr. Ragbir was initially in detention in 2008. *See* POCR Worksheet, ECF No. 1-12. Counsel suspects that the consulate was unaware

---

*U.S.*, No. 5:07-CV-26, 2007 WL 951618, at *3 (S.D. Tex. Mar. 28, 2007); *Bah v. Cangemi*, 489 F. Supp. 2d 905, 916 (D. Minn. 2007) (discussing the total period of custody). To hold otherwise would allow ICE to circumvent *Zadvydas* by releasing and re-detaining individuals every six months; such a result could not have been the intention of the *Zadvydas* court.

[19] In *Abimbola v. Ridge*, an unpublished decision, the Petitioner filed multiple lawsuits with identical arguments as a previous filing, in order to delay his removal. 181 Fed. App'x 97, 98-99 (2d Cir. 2006). In *Garcia v. DHS*, also unpublished, the Petitioner had filed a second identical claim. 422 Fed. App'x 7 (2d Cir. 2011). In *Callender v. Shanahan*, Petitioner filed ten applications and appeals, including three back-to-back motions to reopen and two similar applications to USCIS, with appeals in order to delay. 2017 WL 6414152 at *2 (SDNY Dec. 13, 2017). In *Agoro v. Dist. Dir. For ICE*, the Petitioner continued to file appeals "in an effort to prolong the removal process." 2010 WL 9976 at *5 (SDNY Jan. 4, 2010).

9

of Mr. Ragbir's multiple pending matters when they issued the now-expired travel document, ECF No. 24-1, due to misstatements by ICE.[20] Thus, to the extent that the reasonable foreseeability of removal is even relevant to the issue before this Court, the Government cannot rely on issuance of the previous travel document to seek such a finding. He should thus be immediately released from custody.

## CONCLUSION

As Mr. Ragbir is neither a flight risk nor a danger, his detention is unjustified and unnecessary to ensure his presence at the moment of removal. This Court should, therefore, order Mr. Ragbir's immediate release and declare the revocation of his OSUP unlawful without a constitutionally adequate hearing. If ICE then pursues revocation through a constitutionally sufficient hearing and an impartial adjudicator finds Mr. Ragbir's OSUP was properly revoked, ICE's final obligation would be to provide Mr. Ragbir with an opportunity for the orderly departure he was promised. An orderly departure is both appropriate and meaningful for Mr. Ragbir, given the value that having time to put his affairs in order would provide him, his U.S. Citizen wife and daughter, his extended family, the non-profit organization he leads, and the thousands of immigrants that the organization touches and empowers. *See* ECF 11-4 § III(B)(1) (discussing lack of flight risk); Ruiz Decl. (discussing Mr. Ragbir's responsibilities as Executive Director of New Sanctuary Coalition).[21]

---

[20] In the events surrounding Mr. Ragbir's arrest and detention on January 11, 2018, ICE repeatedly – and incorrectly – claimed that he had exhausted his legal challenges, when in fact he had three legal matters pending. *See* ECF No. 1-18 ("your client has exhausted all legal means to prevent his removal").

[21] As explained by Rev. Ruiz, Co-Founder of New Sanctuary Coalition ("NSC"), NSC is an organization with few employees but enormous impact. As Executive Director, Mr. Ragbir is the face of NSC and personally maintained all of the organization's relationships with numerous elected officials, faith leaders, legal organizations, and funders. The ability to make in-person introductions between these key players and the staff of NSC is critical to the sustainability of the organization. Additionally, Mr. Ragbir singularly handled the finances and grant applications, some of which are pending. His release, the opportunity to transition both leadership and institutional knowledge necessary for running NSC, and to put his personal affairs in order, would be incredibly valuable.

10

Dated: New York, New York  
January 25, 2018

Respectfully submitted,

 /s/ Alina Das  
ALINA DAS, Esq. (AD8805)  
JESSICA ROFÉ, Esq. (JR5231)  
Brittany Castle, Legal Intern  
Jeremy Cutting, Legal Intern  
Washington Square Legal Services, Inc.  
Immigrant Rights Clinic  
245 Sullivan St., 5th floor  
New York, New York 10012  
Tel: (212) 998-6430  
alina.das@nyu.edu

*Counsel for Petitioner*