UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **Ravidath Lawrence RAGBIR**<br><br>                Petitioner<br><br>        vs.<br><br>**Jefferson SESSIONS III, in his official capacity as the Attorney General of the United States; Kirstjen NIELSEN in her official capacity as Secretary of Homeland Security; Thomas DECKER, in his official capacity as New York Field Office Director for U.S. Immigration and Customs Enforcement; Scott MECHKOWSKI, in his official capacity as Assistant New York Field Office Director for U.S. Immigration and Customs Enforcement; and the U.S. DEPARTMENT OF HOMELAND SECURITY.**<br><br>                Respondents | Case No.: 1:18-cv-236 (KBF)<br><br>**Declaration of Amy Gottlieb in Support of Ravidath Ragbir's Amended Petition for Writ of Habeas Corpus** |

**Declaration of Amy Gottlieb in Support of Petitioner's Petition for Writ of Habeas Corpus**

Pursuant to 28 U.S.C. § 1746, I, Amy Gottlieb, declare under penalty of perjury that the following is true and correct:

1. My name is Amy Gottlieb. I am a U.S. citizen, born in Brooklyn, New York. I am married to the petitioner, Ravidath "Ravi" Ragbir. We reside at 193 State Street, Apartment 8, Brooklyn, New York, 11201.

2. I submit this supplemental declaration in support of Ravi's petition for a writ of habeas corpus, to explain the impact that his detention has had on our family, and the personal affairs that he would be able to take care of if he were released from detention.

3. On January 11, 2018, Ravi was detained by Immigration and Customs Enforcement officers. For almost an entire day, I didn't know where Ravi was. I later learned that he was immediately put on a plane to Miami, and was supposed to be deported the next morning. Thankfully, he was not deported, and I am hopeful that the legal challenges he has pending will ultimately allow him to

remain permanently with me, his daughter, and our entire tight-knit community of friends and colleagues.

4. Ravi's sudden detention has been utterly devastating, more so that I could have imagined. I am an immigration attorney and have worked with numerous family members who have loved ones in detention. However, when it is *your* loved one, *your* husband, it all takes on a new meaning.

5. I have been able to visit my husband twice now since he was detained. The first visit was in Miami, for one hour. It cost over $700 dollars to fly to Florida where he was detained, and I was only permitted to speak to him through plexiglass. The second visit was also for one hour, at Orange County Correctional Facility, where he is currently being held. I drove for two hours each way for that visit. Thankfully, we were permitted a contact visit, but it is still nothing even close to being together in our home, and one hour is far too short to discuss all that we need to.

6. I have been able to speak with my husband by phone, but the private phone company contracted by Orange has exorbitant phone fees. For the first call, I paid $25.00 for a twenty minute call. These fees add up – I have already spent over $250 in phone payments - and there is so much to discuss and put in order, should my husband be deported.

7. For one thing, I do not have access to his bank account information and am unable to pay the bills that have come in his name since he was arrested. So many of the few precious minutes that I have to speak with my husband are spent trying to remember his passwords, and then sharing that account information with me over a recorded phone line. It sometimes feels like a loved one passed away and I am the executor of his estate, trying to figure out all these mundane things – yet my husband is still alive, but locked away and isolated from me.

8. My husband was also in the process of consecutive dental surgeries when he was detained. His teeth have deteriorated significantly and painfully over the years, and he had arranged for a series of dental surgeries to place crowns on his teeth to protect them for further deterioration. He had surgery on a portion of his teeth, and was in the process of scheduling the second surgery when he was detained. If he were released, he would be able to complete this dental work, which I am sure would not be available or would be prohibitively expensive in Trinidad.

9. This does not even mention all of the things my husband needs to put in order for New Sanctuary Coalition. The New Sanctuary staff are wonderful – all of them hand-picked by Ravi to join the organization – but most of them are new to the organization and were still in the process of being trained by Ravi.

10. Perhaps most importantly, if my husband is released from detention – even if he is eventually asked to depart in months – he will be able to spend his last days surrounded by his family and community. My parents and my siblings will be able to say goodbye to him. I will be able to say goodbye. When someone has been fully compliant with his supervised release and has done everything asked of him by ICE, yet ICE still decides to ignore all of that and break apart our family, it is the very least that he deserves.

11. For all of these reasons and others, I hope this Court will grant my husband's petition.

| | |
|---|---|
| Dated: January 25, 2018<br>New York, NY | Respectfully submitted,<br><br>_____<br>Amy Gottlieb |