UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X

RAVIDATH LAWRENCE RAGBIR,

                        Petitioner,

           -v-

JEFFERSON SESSIONS III, in his official
capacity as the Attorney General of the United
States, KIRSTJEN NIELSEN, in her official
capacity as Secretary of Homeland Security,
THOMAS DECKER, in his official capacity as
New York Field Office Director for U.S.
Immigration and Customs Enforcement,
SCOTT MECHKOWSKI, in his official capacity
as Assistant New York Field Office Director for
U.S. Immigration and Customs Enforcement,
and the U.S. DEPARTMENT OF HOMELAND
SECURITY,

                        Respondents.

------------------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: January 29, 2018

18-cv-236 (KBF)

OPINION & ORDER

KATHERINE B. FORREST, District Judge:

      There is, and ought to be in this great country, the freedom to say goodbye. That is, the freedom to hug one's spouse and children, the freedom to organize the myriad of human affairs that collect over time. It ought not to be—and it has never before been—that those who have lived without incident in this country for years are subjected to treatment we associate with regimes we revile as unjust, regimes where those who have long lived in a country may be taken without notice from streets, home, and work. And sent away. We are not that country; and woe be the day that we become that country under a fiction that laws allow it. We have a law higher than any that may be so interpreted—and that is our Constitution. The wisdom of our Founders is evident in the document that demands and requires

more; before the deprivation of liberty, there is due process; and an aversion to acts that are unnecessarily cruel. These fundamental rights are at issue in this case.[1]

After having spent nine years in this country without incident, reporting as required to immigration authorities and building a home, a family,[2] and a community, on January 11, 2018, Ravidath Ragbir[3] was suddenly taken into custody. He was informed that his time in this country was at an end; without further ado, without the freedom to say goodbye, he was taken away. This abrupt and by all accounts unnecessary detention, a step in the direction of deportation, was wrong. To be sure, there is a complicated statutory scheme that has been written in so many different voices and with so many agendas that it is now akin to a corn maze. That scheme, read as the Government here reads it, allows for precisely those acts that occurred on January 11, 2018. Under that reading, petitioner's status was essentially always at will and subject to immediate revocation if a mysterious "travel document" was obtained.[4] How and when said

---

[1] The Court also notes with grave concern the argument that petitioner has been targeted as a result of his speech and political advocacy on behalf of immigrants' rights and social justice. "[A]s a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." United States v. Alvarez, 579 U.S. 709, 716 (2012) (quoting Ashcroft v. American Civil Liberties Union, 535 U.S. 564, 573 (2002) (internal quotation marks omitted)).

[2] Mr. Ragbir is married to a United States citizen and also has a child born in this country.

[3] Ravidath "Ravi" Lawrence Ragbir is an immigrant who came to the United States from Trinidad and became a Legal Permanent Resident in 1994. Prior to detention, Mr. Ragbir lived in Brooklyn, New York, with his wife and daughter, both of whom are American citizens. He is the Executive Director of the New Sanctuary Coalition of New York City, sits on the Steering Committee of the New York State Interfaith Network for Immigration Reform, and has served as the Chair of the Board of Families for Freedom.

[4] This Court notes that the travel document at issue expired by its terms on January 14, 2018. In other words, the circumstances that were "changed" and that had allowed for the revocation of supervised release, have now "changed back." Moreover, it appears from the record (various ICE worksheets) that a travel document has been easily obtainable for years, rendering receipt of such a document as the basis for "changed circumstances" fictive.

document would be sought, let alone obtained, is unclear. Here, petitioner was never told that such a document had been applied for and, unless the process requires many years to complete, such document had not been sought for over a decade. In short, petitioner had no reason to suspect that this meeting on January 11, 2018 would result, as it did, in his immediate and abrupt detention.

The Court in fact agrees with the Government that the statutory scheme—when one picks the path through the thicket in the corn maze—allows them to do what was done here. But there are times when statutory schemes may be implemented in ways that tread on rights that are larger, more fundamental. Rights that define who we are as a country, what we demand of ourselves, and what we have guaranteed to each other: our constitutional rights. That has occurred here.

In sum, the Court finds that when this country allowed petitioner to become a part of our community fabric, allowed him to build a life with and among us and to enjoy the liberties and freedom that come with that, it committed itself to allowance of an orderly departure when the time came, and it committed itself to avoidance of unnecessary cruelty when the time came. By denying petitioner these rights, the Government has acted wrongly. The petition must and shall be granted.

I. STATEMENT OF LEGAL PRINCIPLES[5]

The Court agrees that the statutory scheme governing petitioner's status is properly read to allow for his removal without further right of contest. He is subject to a final order of deportation, he has been under an order of supervision that the statute provides a right to revoke if and when there was a change in circumstances, and receipt of a "travel document" that allowed for immediate deportation was such a change of circumstance. Once the travel document had been obtained, the statutory scheme provides for the revocation of supervision and detention, as his deportation had become reasonably foreseeable. All of this is correct. But under the circumstances, the process by which it was done was nonetheless insufficient. The manner in which deportation was and is to be effected here requires more.

The statutory scheme fails to account for the circumstances here; circumstances that petitioner shares with so many others who are similarly subject to final orders of deportation and have similarly lived under orders of supervision without incident for years. In such circumstances, the Fifth Amendment's liberty and due process guarantees are North Stars that must guide our actions. Yes, petitioner knew he was under a final order of deportation; yes, he had had numerous instances in which he had been heard by U.S. Immigration and Customs

---

[5] The Court has jurisdiction over this petition under 28 U.S.C. § 2241. See Zadvydas v. Davis, 533 U.S. 678, 687 (2001) (citing 28 U.S.C. § 2241(c)(3), which "authorize[s] any person to claim in federal court that he or she is being held 'in custody in violation of the Constitution or laws . . . of the United States'").

4

Enforcement ("ICE") and courts, arguing that he should be allowed to stay.[6] And yes, that was all at an end. But if due process means anything at all, it means that we must look at the totality of circumstances and determine whether we have dealt fairly when we are depriving a person of the most essential aspects of life, liberty, and family.[7] Here, any examination of those circumstances makes clear that petitioner's liberty interest,[8] his interest in due process, required that we not pluck him out of his life without a moment's notice, remove him from his family and community without a moment's notice. The process that was due here is not process that will allow him to stay indefinitely—those processes have been had. The process that is due here is the allowance that he know and understand that the time has come, that he must organize his affairs, and that he do so by a date certain. That is what is due. That is the process required after a life lived among us.[9]

---

[6] Mr. Ragbir was granted his first stay of removal by the ICE Field Office in New York City in December 2011. This stay was renewed three more times in February 2013, March 2014, and January 2016. His most recent stay renewal request was filed on November 16, 2017. Mr. Ragbir, his family, and his counsel had every reason to expect that the most recent stay would be granted. Mr. Ragbir had also been granted multiple, continuous work permits since his release pursuant to 8 U.S.C. § 1231(a)(7), which provides that work authorization can be issued when the removal of an individual is impossible as a result of travel document related issues or is "otherwise impracticable or contrary to the public interest."

[7] "These decisions underscore the truism that due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances. (D)ue process is flexible and calls for such procedural protections as the particular situation demands." Mathews v. Eldridge, 424 U.S. 319, 334 (1976) (internal quotations and citations omitted).

[8] "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Fifth Amendment's Due Process Clause] protects." Zadvydas, 533 U.S. at 690 (citing Foucha v. Louisiana, 504 U.S. 71, 80 (1992)).

[9] In his first order of release, petitioner was placed under supervision. At that time, the order of release informed him "Once a travel document has been obtained, you will be required to surrender to ICE for removal. You will, at that time, be given an opportunity to prepare for an orderly departure."

Here, instead, the process we have employed has also been unnecessarily cruel. And those who are not subjected to such measures must be shocked by it, and find it unusual.[10] That is, that a man we have allowed to live among us for years, to build a family and participate in the life of the community, was detained, handcuffed, forcibly placed on an airplane, and today finds himself in a prison cell. All of this without any showing, or belief by ICE that there is any need to show, that he would not have left on his own if simply told to do so; there has been no showing or even intimation that he would have fled or hidden to avoid leaving as directed. And certainly there has been no showing that he has not conducted himself lawfully for years.[11] Taking such a man, and there are many such men and women like him, and subjecting him to what is rightfully understood as no different or better than penal detention, is certainly cruel. We as a country need and must not act so. The Constitution commands better.

II. CONCLUSION

Having carefully reviewed the submissions and entire record in this matter, and having heard the parties, the Court is convinced that it must grant the petition for habeas corpus. Constitutional principles of due process and the avoidance of

---

[10] "The Eighth Amendment's prohibition of cruel and unusual punishment 'guarantees individuals the right not to be subjected to excessive sanctions.'" Miller v. Alabama, 567 U.S. 460, 469 (2012) (quoting Roper v. Simmons, 543 U.S. 551, 560 (2005)). The Court further notes the clear principle that deportation proceedings are "civil, not criminal" and are assumed to be "nonpunitive in purpose and effect." See Zadvydas, 533 U.S. at 690.

[11] The order of deportation is based upon a felony conviction for wire fraud that petitioner sustained in 2001. It is uncontested that since his release from custody, petitioner has lived a life of a redeemed man.

6

unnecessary cruelty here allow and provide for an orderly departure. Petitioner is entitled to the freedom to say goodbye.

Accordingly, it is hereby ORDERED that petitioner shall be immediately released from custody.

SO ORDERED.

Dated:  New York, New York
        January 29, 2018

_____
KATHERINE B. FORREST
United States District Judge